[Civil No. 1592.   Filed December 31, 1918.]

[177 Pac. 24.]

INSPIRATION CONSOLIDATED COPPER COMPANY, a Corporation, Appellant, v. FRED A. LINDLEY, Appellee.

1. MASTER AND SERVANT—INJURIES TO SERVANT—INSTRUCTIONS—AMBIGUITY.—In employee's action for personal injuries, instruction on assumption of risk *held* not to be ambiguous or confusing.

2. MASTER AND SERVANT—ASSUMPTION OF RISK—QUESTION OF FACT.—Whether injured employee assumed risk of his employment is a question of fact, made so by the Constitution.

3. MASTER AND SERVANT—ASSUMPTION OF RISK—ORDINARY RISKS.—A servant assumes the ordinary risks incident to his employment.

4. MASTER AND SERVANT—ASSUMPTION OF RISK—NEGLIGENCE OF MASTER.—A servant does not assume the extraordinary risks of the master's negligence.

5. MASTER AND SERVANT—ASSUMED RISK—DANGEROUS PLACE—UNSAFE APPLIANCES AND MASTER'S ORDERS.—An employee working in a dangerous place with unsafe appliances, or in dangerous manner in obedience to master's orders, does not assume the risk, unless the danger was so imminent that a man of ordinary prudence would not have incurred the risk or hazard.

6. MASTER AND SERVANT—ASSUMED RISK—EXTRAORDINARY DANGERS—APPRECIATION OF DANGER.—A motor helper on underground ore train assumed such extraordinary and unusual dangers of such work as were open and obvious and were fully observed, understood and appreciated by him.

7. TRIAL—INSTRUCTIONS—CONSTRUCTION AS A WHOLE.—Instructions are to be considered as a whole.

8. MASTER AND SERVANT—INJURY TO EMPLOYEE—UNDERGROUND ORE TRAIN—NEGLIGENCE OF MINE OWNER.—A mine operator, which was negligent in failing to furnish adequate footboard on locomotive motor of underground ore train and adequate headlight, or in moving at excessive speed with timbers in close proximity to track, was liable for injuries to motor helper, where he was not fully informed as to dangers, which were not obvious.

9. DAMAGES — PERSONAL INJURIES — LOSS OF EARNING CAPACITY.—An injured employee was entitled to damages for loss or diminution of his earning capacity during his entire expectancy of life.

10. DAMAGES—INSTRUCTIONS—EARNING CAPACITY.—An instruction, authorizing consideration of employee's probable chance of increased earnings was objectionable as speculative, such probable chance being included in the element of "loss of earnings," for which jury had been charged.

11. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS.—A misleading instruction, authorizing jury in personal injury action to consider plaintiff's probable chance, if any, of increased earnings had he not been injured, where it had previously been instructed to award damages for loss of earnings, if any, in the future of his life, was harmless, where no complaint was made that verdict was excessive by reason of such instruction.

12. APPEAL AND ERROR—REVIEW—VERDICT—EXCESSIVE DAMAGES.—The supreme court will disturb a verdict for excessive damages only when it appears that the damages are so excessive that the award cannot be sustained on any other theory than that it was the result of passion or prejudice on the part of the jury; such award being within the intelligent discretion of the jury.

APPEAL from a judgment of the Superior Court of the county of Gila.  G. W. Shute, Judge.  Affirmed.

Mr. E. W. Rice, for Appellant.

Messrs. Struckmeyer & Jenckes, for Appellee.

JOHN WILSON ROSS, J.—This is an action for damages for personal injuries alleged to have been sustained by appellee as the result of the negligence of appellant.  Appellee was working as motor helper on one of appellant's underground ore trains, engaged in hauling ore on the 400-foot level of its mine from the Colorado shaft to the tipple, whence it was elevated to the surface.  The train on which appellee was working consisted of ten steel cars of the capacity of five tons each, drawn by a 12-ton compressed air locomotive.  Extending across the front end of the locomotive was a bumper, the top of which was of the depth of the seat of a chair.  Bolted to the lower front edge of the bumper were iron lugs, which extended forward approximately nine inches.  Upon these lugs were fastened a running-board, which extended across the front edge of the bumper from the lower edge thereof.  The route traveled by the train between the Colorado shaft and the tipple was along a side drift.

Appellee began to work on this train on the morning of April 25, 1916, the day of the accident.  On the morning of the accident, he was directed to work on the train on which he sustained his personal injuries, on account of which this suit is prosecuted.  During the forenoon several trips were made from the Colorado shaft and other points in that section of the mine to the tipple, and passed the point where the accident occurred.  Appellee was sitting upon the bumper in front of the motor when the accident occurred and the consequent injuries were sustained.  The train turned a sharp curve in the drift, when the two front wheels of the four on which it rested were derailed, and appellee's legs were crushed so that the right leg was subsequently amputated.

Appellee, at the beginning of the trial, elected to rely wholly upon the second count, and took a nonsuit as to the first count.  In his second count he charged the appellant with negligence in operating the locomotive without a headlight, and with a defective footboard, and in traveling at a

XX Ariz.—7

dangerous rate of speed, and in piling timbers so near the track that insufficient space was left on the track for the locomotive to pass thereon. It was admitted that no globe was on the headlight on the day of the accident. There was a conflict as to the condition of the footboard, and a conflict as to the speed of the train at the time of the accident.

Appellant interposed as its defense contributory negligence, assumption of risk and a general demurrer. The cause was tried before a jury, resulting in a verdict in favor of the appellee for $22,500, upon which judgment was entered. This appeal is from the final judgment.

We will consider assignment of error No. 1 and assignment of error No. 2, *seriatim*.

Assignment of error No. 1 is that the court erred in giving the following instructions at the request of appellee:

"The defendant, in its answer, has alleged that the plaintiff's injuries, if any, were caused by the ordinary risks or hazards of the work in which the plaintiff was engaged, and that the plaintiff voluntarily assumed the risk of injury therefrom. Now, I charge you that whether or not he did assume the risk is a question of fact which, under the law of this state, is within your exclusive province to determine. The law is that a servant assumes the ordinary risk incident to the business in which he is engaged, *but he does not assume the extraordinary risk of the negligence of the master, or in obedience to the master's order doing work in a dangerous place with unsafe appliances, or in a dangerous manner, unless the danger thereof was so imminent that a man of ordinary prudence would not have incurred the risk or hazard. . . .* You are instructed that Lindley assumed the risk of injury from the extraordinary and unusual dangers and hazards of his work if they were open and obvious to and were fully observed, understood, and appreciated by him. If you find that Lindley was injured by an extraordinary risk, danger, or hazard, or by several of them concurring, and that the same was, or were, open and obvious to and was, or were, fully observed, understood and appreciated by him then your verdict must be for the defendant."

The above-quoted instructions, as a whole, when analyzed and separated, cannot be said to be ambiguous, confusing or erroneous. They point out that whether the appellee assumed the risk of his employment is a question of fact, made

so by the Constitution of Arizona; that a servant assumes the ordinary risks incident to his employment; that the servant does not assume the extraordinary risks of the negligence of the master; that the servant doing work in a dangerous place with unsafe appliances, or in a dangerous manner in obedience to the master's order, does not assume the risk of the negligence of the master, unless the danger thereof was so imminent that a man of ordinary prudence would not have incurred the risk or hazard; that appellee assumed the risk of injury from the extraordinary and unusual dangers and hazards of his work if they were open and obvious to and were fully observed, understood and appreciated by him; that if the jury find that the appellee was injured by an extraordinary risk, danger or hazard, or by several of them concurring, and that the same was, or were, open and obvious to, and was, or were, fully observed, understood and appreciated by appellee then your verdict must be for the appellant.

The duty of this court is to examine all the instructions and determine from them as a whole whether the law was correctly given.

"In determining whether the jury was or was not misled, the whole charge will be considered together, and reversible error will not be predicated if it appears that, although the effect of the doctrine of assumption of risks was not specifically stated, the language of the trial judge indicated with sufficient clearness that no recovery could be had if the risk in question was appreciated." Labatt's Master and Servant, 2d ed., p. 3184, par. 1185.

As we view the case presented by this record in the foregoing instruction, it is: The jury was warranted in finding that the condition maintained by appellant at the *locus in quo* of the accident was not a reasonably safe one, or that appellant was negligent in its failure to furnish an adequate footboard on its locomotive motor, or an adequate headlight thereon, or that its train was moving at an excessive rate of speed at the time of the accident; and that the situation of a timber or timbers in close proximity to the track upon which the train was moving constituted an extraordinary risk, a risk unknown to appellee until an instant before the accident, and a danger concealed from appellee, and which could have been known to the appellant by the use of ordinary care for

the reason that appellant had the immediate exclusive control over the *locus in quo* of the accident; and, as the negligence of the master is never one of the risks assumed by the servant, the conclusion that appellant was guilty of negligence, or, in other words, it had failed in its duty toward appellee, would inevitably follow, unless the affirmative defense is established to the effect that appellee was fully informed as to the danger arising from such negligence, or that the same was so obvious that he ought to have known it. In such case, whether the appellee be said to have assumed the risk, or to have been guilty of contributory negligence in voluntarily exposing himself to such danger, the appellant is not liable. The determination thereof was left to the jury, and we cannot justly criticize the conclusion to which the jury in this case came.

Appellant's assignment of error No. 2 complains that the court erred in giving the following instruction to the jury at the request of appellee:

"You are instructed that if you find for the plaintiff you will assess his damages at such sum of money as will be a fair and reasonable compensation to him for the injuries he has received as a result of the alleged accident; and, in arriving at the amount of said sum of money, you will take into consideration, as you find from the evidence, the nature and extent of his injuries, whether temporary or permanent in character, results reasonably certain to follow, any disfigurement of his person as a result of his injuries, the bodily pain and mental suffering he has endured, and that he is reasonably certain, from the evidence, to endure hereafter as a result of his physical injuries, the loss of earnings from his labor since he received his injuries, and the loss of earnings, if any, in the future of his life by virtue of his alleged decreased capacity to earn money because of his injured condition, his age and reasonable expectancy of life, his vocation and earning capacity prior to his injury, *and his probable chance, if any, of increased earnings had he not been injured.*"

The appellant objects to the concluding clause, in italics, in the foregoing instruction, for the reason, as he claims, the jury was asked to take into consideration appellee's probable chance of increased earnings had he not been injured. Appellant complains that the vice of the instruction is twofold, in this: That the jury was asked to take into consideration the probable chances of increased earnings, and that there

was no evidence in the record that appellee would probably earn an increased income had he not been injured.

On the measure of damages the court instructed the jury that if they found for the appellee they should assess his damages at such sum of money as will be a fair and reasonable compensation to him for the injuries he has sustained as a result of the alleged accident, and in arriving at the amount to take into consideration the nature and extent of his injuries, whether the injuries were temporary or permanent, disfigurement of his person, bodily pain and mental suffering he had endured, and is reasonably certain to endure, the loss of earnings since he had been injured, and the loss of earnings. if any, in the future, his age and reasonable expectancy of life, his vocation and earning capacity prior to his injuries, and his probable chance, if any, of increased earnings had he not been injured.

"No fixed rule exists for estimating the damages to be recovered by one who is permanently disabled from laboring, through the negligence of another; the most that can be done is to instruct the jury in general terms to award a fair and reasonable compensation, taking into consideration what plaintiff's income would probably have been, how long it would have lasted and all the contingencies to which it was liable." *Richmond & Danville R. Co.* v. *Allison,* 86 Ga. 145, 11 L. R. A. 43, 12 S. E. 352.

The rule of damages in personal injury cases is succinctly stated in 8 R. C. L., page 477, with numerous citations in appended notes, which rule we approve as applicable in the instant case:

"One who is injured in his person may recover for loss or diminution of his earning capacity during his entire expectancy of life, and is entitled to such an amount as will compensate him for such loss. The jury may consider how far the injury will in all probability disable him from engaging in those pursuits and occupations for which, in the absence of said injury, he would have been qualified."

The clause of the instruction is subject to criticism as having reference to an element of damages, speculative in its nature. The probable chance of increased earnings, had he not been injured, is necessarily included in the element of "loss of earnings, if any, in the future of his life," as stated in an earlier part of the instruction. The objectionable

clause, at most, serves to emphasize that element of damages, and in the connection in which it is used could be misunderstood as an additional element to be considered by the jury. If so considered, the instruction served to mislead the jury, and was therefore erroneous. We cannot say that such was the result. No complaint is made to the effect that the verdict is excessive because of such instruction, but appellant does complain that the verdict is excessive because of passion and prejudice., Upon the whole case, we are unable to see that any injury has resulted to appellant from this ambiguous instruction. We conclude, therefore, that the clause of the instruction, while improper, was without effect as injuring the defendant. We can only disturb a verdict for excessive damages when it appears that the damages are so excessive that the award cannot be sustained on any other theory than that it was the result of passion or prejudice on the part of the jury. It was for the jury to exercise an intelligent discretion in the award of damages, and there is nothing in the amount awarded to indicate that the verdict was the result of other than the exercise of a sound discretion.

For the foregoing reasons, the judgment of the lower court is affirmed.

CUNNINGHAM, C. J., concurs.

HENRY D. ROSS, J., being absent on account of illness, took no part in the decision of this cause.

---

For authorities discussing the question as to whether a servant may assume the risks of dangers created by master's negligence, see notes in 4 L. R. A. (N. S.) 848; 28 L. R. A. (N. S.) 1215.

On excessiveness of verdicts for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.