[Civil No. 3822. Filed July 12, 1937.]

[70 Pac. (2d) 319.]

THERON HUMPHREY, a Minor, by His Guardian *Ad Litem*, M. E. HUMPHREY, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, E. V. JACKSON and W. F. HALLOWAY, Appellees.

Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld, for Appellant.

Messrs. Fennemore, Craig, Allen & Bledsoe, for Appellees.

LOCKWOOD, J.—This is an appeal by Theron Humphrey, a minor, hereinafter called plaintiff, from a judgment in favor of the Atchison, Topeka and Santa Fé Railway Company, a corporation, hereinafter called defendant, and E. V. Jackson and W. F. Halloway. The action arose out of a collision between a train owned and operated by the corporation defendant and an automobile in which plaintiff was riding at the time of the collision. There is no doubt as to the fact that plaintiff was seriously injured as a result of the collision, the question being as to who was legally responsible for the accident. The undisputed facts of the case are as follows:

The physical condition of the terrain at and near the scene of the accident is of vital importance in the case and may be thus described: The corporation defendant and the Southern Pacific Company, which operates another line of railroad in the state of Ari-

zona, use a common station on Fourth Avenue in Phoenix. From that point their respective tracks run parallel in a westerly direction approximately to Eighteenth Avenue, when the defendant's line turns northwesterly towards Prescott, the Southern Pacific line continuing to the west. At the place where Eighteenth Avenue crosses both of these tracks, running north and south, the northerly rail of the Southern Pacific track is approximately 42 feet south of the southerly rail of defendant's track. On the easterly side of Eighteenth Avenue, just south of the Southern Pacific tracks, there is a frame building, with some outbuildings, and three tamarack trees standing in the yard. These buildings and trees tend to obstruct the view in an easterly direction of travelers going north on Eighteenth Avenue, until they reach a point approximately 80 feet south of the south rail of defendant's tracks. At this last point the visibility to the east is approximately 1100 feet. At the south rail of the Southern Pacific track, the visibility to the east is at least a quarter of a mile. In fact, unless there are trains or cars on the tracks, the Union Station (over half a mile to the east) may be seen from this point. Plaintiff, at the time of the accident on August 26, 1934, was a minor child of approximately thirteen years of age, living with his father at 517 South Eighteenth Avenue, in the city of Phoenix. His grandfather lived in the house immediately south, and at about 11:30 A. M. of the day of the accident plaintiff, a boy cousin, and his grandfather started north on Eighteenth Avenue for the purpose of getting some ice. They were in a model T Ford sedan, driven by the grandfather; plaintiff being seated on the eastern side of the sedan, with his cousin between him and his grandfather, the windows being open at the time. Train No. 4 of the defendant had left the Union Station about the same time, and was proceeding in a westerly direction at approximately 20 miles

per hour, so that the line of travel of the two moving bodies would intersect at the crossing of Eighteenth Avenue and defendant's tracks. According to the testimony of the plaintiff, his grandfather started out at a speed of from 12 to 16 miles per hour, and when he reached the Southern Pacific tracks practically came to a stop. He then started up at a speed no greater than that at which he had been going, and when the automobile had about reached the intersection, plaintiff noticed the train almost upon them. He had time for but one cry of warning when the collision occurred.

It is the claim of plaintiff that the accident was caused by the negligence of the engineer and fireman of defendant's train, in failing to ring a bell or blow a whistle as required by law when approaching the crossing of Eighteenth Avenue, and also that they did not, when they saw the automobile approaching, act as ordinarily prudent men under the circumstances should have acted.

It is the contention of defendant company that its employees did ring a bell, as required by law, and that they at all times acted as ordinarily prudent men under the circumstances should have acted. It was its further contention that plaintiff himself did not use the ordinary care required of one of his age and under his situation, in observing and giving warning of the approach of the train in question, and that the accident was due to the negligence of the driver of the car, or to that combined with plaintiff's contributory negligence.

The matter was tried to a jury which returned a verdict in favor of the defendants. Judgment was duly rendered thereon, and from such judgment this appeal is taken.

There are nine assignments of error which fall naturally into three groups. The first assigns error in the admission in evidence of Defendant's Exhibits 1,

2, and 3, being three photographs of the scene of the accident, without the proper preliminary proof. Assignments 2 and 3 are to the effect that there was no evidence authorizing the submission to the jury of the issue of contributory negligence on the part of the plaintiff. Assignments 4 to 9 question the giving of certain instructions to the jury by the court.

 We will consider the first assignment of error. Photographs of the scene of an accident are admitted in evidence for the purpose of making more clear to the jury testimony in regard to what occurred at the time of the accident. The general rule as to their admissibility is that if a photograph be a substantially correct reproduction of the scene of the accident, and if it will aid the jury in understanding the testimony, it should be admitted, and that its admissibility, both so far as it is in fact a true reproduction of the scene and whether it is practically instructive to the jury, is a preliminary question to be determined by the trial judge, who is invested with considerable discretion in the matter, and his action will ordinarily be sustained by the appellate court. We have examined the photographs in question very carefully, and have read the testimony in the record, both in regard to the circumstances under which they were taken and what they were intended to explain. We think the only objection raised thereto worthy of consideration is that certain trees appearing in the picture had been trimmed between the time of the accident and the taking of the photographs, thus increasing the apparent visibility of defendant's tracks from Eighteenth Avenue. In view of the testimony in regard to the movement of the automobile and the respective speeds of it and the train, we think it is immaterial whether the trees had been trimmed or not, for the reason that even if they were at the time of the accident

fully as large as claimed by plaintiff, the visibility from the point where the automobile, according to his testimony practically came to a stop, could not have been materially affected by the trees. We think the trial court did not abuse its discretion in admitting these photographs.

The next question is whether there was evidence to go to the jury on the issue of contributory negligence. In Arizona the existence of contributory negligence is a question of fact for the jury and not of law for the court. We think, however, that this rule does not go to the extent of permitting a jury to find contributory negligence on the part of a plaintiff when there is no evidence from which any reasonable man might reach such a conclusion, as such a finding would clearly be actuated by passion and prejudice, and it would be the duty of the court to set it aside. Unless, therefore, there was some substantial evidence from which a reasonable man might have inferred it existed, the court should not have submitted the issue to the jury. In order to be guilty of contributory negligence, a person injured in an accident must have been under the duty of exercising a certain degree of care and his violation of such duty must have been a contributing cause of the accident. The care required of a person, of course, varies in accordance with the circumstances of the case, including the age of the person, his intelligence, his right to rely upon others, and many other considerations. While a passenger in an automobile is not required to assume the same responsibility for its operation as is the driver, he may not utterly disregard plain warnings of imminent danger, more apparent to him than to the driver, and fail to warn the latter. The ordinary thirteen year old boy, while he has not the judgment of an adult, has clear and acute powers of observation, and we think a

174

jury might well decide that it is the duty of such a boy, riding in an automobile which he knows is about to cross two railroad tracks, to use ordinary care in watching the tracks on his side of the car to observe whether trains are approaching, especially when the view of the driver is obstructed by another passenger. Is there evidence in the record from which the jury might infer that the plaintiff did not exercise this care? According to the latter's own testimony, the automobile came practically to a full stop just south of the Southern Pacific tracks. He was in a better position then than either his grandfather or cousin to see trains approaching from the east. At this point, had he looked to the east, he would have had a clear vision for at least 1,100 feet and could have seen the train approaching when it was at least that far away. The train, according to all of the testimony, was traveling not to exceed 20 miles per hour, or approximately 30 feet per second. The automobile had approximately 50 feet to go from the point where plaintiff says it practically came to a stop until it reached defendant's track. It thus appears mathematically certain that casual observation by plaintiff at the time the automobile slowed down would have given him knowledge of the oncoming train in ample time to notify his grandfather, so that the automobile might be stopped. He says, however, that he did not see the train until it was practically upon them, conclusive proof that he could not have been watching the east as the automobile paused south of the Southern Pacific tracks and then picked up speed and approached those of defendant. We think, therefore, that there was evidence from which the jury might have concluded that plaintiff did not exercise the care a boy of his age should have exercised under the circumstances, and that if so, plaintiff was guilty of con-

tributory negligence. We think it was proper to submit this issue to the jury.

 The next question is as to six instructions, which it is claimed were erroneous. This court has stated many times that instructions cannot be considered piecemeal, but must be taken as a whole. *Lenord* v. *State,* 15 Ariz. 137, 137 Pac. 412; *Inspiration Consol. Copper Co.* v. *Lindley,* 20 Ariz. 95, 177 Pac. 24. In the case of *Macias* v. *State,* 36 Ariz. 140, 283 Pac. 711, 716, we have set forth the test to be used in determining whether any specific part of the instructions contains reversible error or not in the following language:

"If any instruction directly contradicts the true rule of law so that the jury would be misled thereby on a material point, it is, of course, fatal; if, however, it is merely incomplete in itself, but when taken together with proper qualifications made in some other portion of the instructions it correctly states the law, it is not reversible error, unless it is so ambiguously worded that a reasonable man, taking the instructions as a whole, would be misled thereby."

We have also held that if the objection is not that the instruction does not correctly state the law, but that it is not as full and complete on some points as it should be, it is the duty of counsel to request that it be amplified. *Kinman* v. *Grousky,* 46 Ariz. 191, 49 Pac. (2d) 624. So far as the instructions complained of in assignments 4, 6, 8, and 9 are concerned, we think it unnecessary to set them forth in full and discuss them at length. The objection to these instructions is not that they misstate the law, but that they do not state all the qualifications of and exceptions to the general rule. We are satisfied that the law was correctly stated to the jury in the instructions complained of, so far as they went, and when considered with the other instructions of the court added, all that was nec-

essary to make the law of the case clear and complete to the mind of the ordinarily intelligent juror was included.

So far as instructions 5 and 7 are concerned, we think they should be discussed a little more fully, as they lay down propositions of law which, perhaps, are open to debate. They read as follows:

"5. You are instructed that while the defendant railway company and plaintiff each had the right to use the road across which the track or tracks of said defendant are laid, yet, because said defendant Atchison Company's trains or cars are run on a fixed track and with great momentum, they had the right-of-way or precedence upon and over those parts of the road occupied by the railway track, and it was the duty of the automobile referred to in the evidence, to give unobstructed passage to any approaching train."

"7. You are instructed that a railway track is of itself a warning. It is a place of danger. It can never be assumed that cars or trains are not approaching on a track, or that there is no danger therefrom. It is, therefore, the duty of every person who approaches a railroad track to exercise proper vigilance to ascertain and to know whether any trains or cars are approaching thereon before attempting to cross thereover. Proper vigilance requires every such person to look and listen before going upon said track or so close thereto as to be in danger."

It is contended that instruction No. 5 is to the effect that the defendant had an absolute right of way over the crossing, regardless of its own negligence, and that it placed on the plaintiff a degree of care amounting to the entire burden of avoiding the accident. We think that this is not a correct interpretation of the instruction. It is undoubtedly true that the railroad company at all times has the right of way and precedence on its own tracks over all other kinds of traffic, and that it is the duty of those who desire to cross the

track and who see a railroad train approaching thereon to give way to the train. This, however, does not mean, and no intelligent man would take it to mean, that the defendant company may operate its train without using the same precaution which any reasonable man is bound to use to avoid accidents, regardless of who has the right of way. An automobile driver may, under given circumstances, have the right of way at any intersection, but that does not justify him in negligently running over a pedestrian who happens to violate that right of way. It was unquestionably the duty of the automobile in question to yield the right of way to the approaching train, but if the driver of the car failed to do so, either willfully or carelessly, that did not relieve the operators of the train from the duty of following the rules of ordinary care, and thus avoiding injuring an occupant of the car.

The objection to instruction No. 7 is that it places a higher degree of care upon the plaintiff than the law requires, and that it invaded the province of the jury. An examination of this instruction shows that it does state the law in this jurisdiction. *Morenci Southern Ry. Co.* v. *Monsour*, 21 Ariz. 148, 185 Pac. 938. A railroad track of itself is unquestionably a warning of danger, and it is the duty of every person who sees such a danger signal to look and listen before going on the track, and thus putting himself in what may at any time become a situation of extreme danger. This does not excuse the operators of the train from also exercising due care, nor does the instruction intimate that it does. It merely lays down the duty of those who go upon railroad tracks.

This disposes of the various assignments of error. We are satisfied that the instructions taken as a whole correctly state the law of the case, even though several of them standing alone do not do so completely.

The court committed no error in the admission of evidence, and there was sufficient evidence from which the jury might have inferred, as it obviously did, either that the plaintiff was guilty of contributory negligence, or else that the operators of the train were guilty of no negligence at all. Either conclusion would have required the verdict which was rendered, and we must assume, since it was supported by evidence, that it is correct.

The judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.