## THE PENNSYLVANIA COMPANY

### *v.*

### GEORGE M. SLOAN.

*Filed at Ottawa May 9, 1888.*

1. PARTIES—*where one is sued by a wrong name—how availed of.* Where the real party in interest, and the one intended to be sued, is actually served with process in the cause, even though under a wrong name, he must take advantage of the misnomer by plea in abatement in such suit. If he does not, he will be concluded by the judgment or decree rendered, the same as if sued in his true name.

2. SAME—*identity of a party sued by a wrong name—as a question of fact.* Where a railway company of a certain name is sued, and after the period of limitation has expired an amendment is allowed substituting a different name as being that of the defendant, and in the latter name the Statute of Limitations is pleaded, and the plaintiff replies that the suit was in fact originally brought against the defendant by a wrong name, the issue thus presented is one of fact, only.

3. SAME—*evidence to show identity of party sued by wrong name.* To show that the defendant railway company was the same company as originally sued, though by a different name, the plaintiff proved that the company whose name first appeared in the summons had ceased to exist, except for closing up its business, long before the alleged cause of action arose, and that its road had passed from it by sale under a decree of foreclosure, and that the defendant company, at the time of the alleged injury sued for, was the lessee of the railway, and alone operating the same, but doing business in the name of the original company, and was using the signs of the old company, and using cars marked with its initials; that the original summons was in fact served on the agent of the new company, and that its attorneys appeared and defended the action without pleading the misnomer of defendant as originally sued, and that it employed the servants whose negligence caused the injury complained of: *Held,* that such evidence was competent, as tending to prove the issue whether the suit, when brought, was in fact against the new company by the name of the original company.

4. NEGLIGENCE—*what constitutes—improper signaling by flagman at railway crossing.* If a flagman of a railway company signals to a person with a horse and buggy to cross over a street crossing at a time when a train, unseen by the person in the buggy, but which the flagman was bound to observe, is moving near and directly toward the team, this will be negligence on the part of the flagman, such as will render the company liable for an injury caused thereby.

5. SAME—*lease of a railroad—liability of both the lessor and the lessee.* While the company owning a railway, its engines, cars and equipments, may be liable to a party injured through the negligence of the servants of its lessee operating the same, the lessee company is also liable.

6. SAME—*of an instruction—whether using inaccurate expressions in imputing negligence.* In an action against a railway company to recover for a personal injury charged to have resulted from the carelessness and negligence of its flagman at a street crossing in signaling the plaintiff to cross its track at a time of danger and peril, the use of the words in an instruction, that if the jury believe, from the evidence, that defendant's flagman "improperly and inopportunely" signaled the plaintiff's team, etc., instead of using the words "carelessly and negligently," was urged as error: *Held,* that while the use of the latter words would have been technically more correct, yet the use of the former words was not sufficiently inaccurate to mislead the jury, those words imputing negligence under the circumstances of the case.

7. LIMITATION—*where several causes of action are declared on.* Where separate causes of action are set up in different counts, and the defendant pleads the Statute of Limitations to the whole declaration, the plaintiff will be entitled to recover if any one of his causes of action is not within the bar.

8. SAME—*of the pleadings, in case of an amendment claimed as introducing a new cause of action.* In 1874 the plaintiff sued a railway company to recover for a personal injury, on the ground of negligence in the engineer in backing his locomotive and needlessly blowing the whistle, and thereby frightening plaintiff's horse and making it unmanageable. In 1877 the declaration was amended, adding as a ground of negligence the improper signaling of the flagman for the plaintiff to cross the tracks. It was contended that the last named cause of action was within the Statute of Limitations of two years. The evidence tended to establish both grounds of negligence: *Held,* that in order to raise the question whether the amendment introduced a new cause of action, there being only one injury claimed, the defendant should have pleaded the statute separately to that part of the declaration having reference to the improper signaling by the flagman.

9. INSTRUCTION—*whether properly limiting the jury to belief "from the evidence."* In an action for personal injuries, the court instructed the jury, that if they found the defendant guilty they should assess his damages, and the instruction then proceeded to state the elements that might be considered in fixing the amount of damages, and closed by the words, "as shown by the evidence:" *Held,* the instruction was not open to the objection that it allowed the jury to assess any amount, without limiting it to any belief as to what the evidence showed. The finding of the defendant guilty as specified in the instruction, presupposed a belief, from the evidence, in the truth of the facts referred to in previous instructions.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding.

Mr. GEORGE WILLARD, for the appellant.

Mr. JOHN LYLE KING, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This suit was commenced in the Circuit Court of Cook County on July 3, 1874, by the appellee to recover damages for personal injuries received July 5, 1872. On the latter day, appellee was riding in a buggy westward on Eighteenth street in the city of Chicago and came to Stewart Avenue, along which the railroad tracks of the appellant, ten or twelve in number, run from north to south and from north-east to south-west. He was there stopped by a train passing on one of the tracks farthest to the west, and waited for some time for an opportunity to get across. A number of stationary cars, standing on one of the easterly tracks south of Eighteenth street, obstructed his view of the tracks between the stationary cars on the east and the moving train on the west. When the latter train had passed, he was signaled to come on and motioned to to hurry up by the flagman, whose duty it was to give signals of the movements of the cars and engines. Before he could cross the net-work of tracks, a train backing up from the south and theretofore hidden by the stationary cars, stopped his further progress by moving directly in front and so near as to touch the horse's head. The horse became frightened and reared and plunged and backed the buggy towards the east, where it was in danger of colliding with a locomotive advancing from the north in appellee's rear. In this state of affairs the whistle of the locomotive was suddenly blown and increased the fright of the horse. In peril of his life from the train in front of him, the locomotive in the rear of him and the plung-

ing of the frightened horse, appellee jumped from the buggy and received the injuries complained of.

The declaration charges that the servants of appellant were guilty of negligence in signaling appellee to advance across the tracks, when an approaching train, that he could not see, made it unsafe to do so, and in driving the locomotive along the track at that time and needlessly and improperly blowing its whistle.

The suit, as originally begun by summons issued on July 3, 1874, was against the Pittsburgh, Fort Wayne and Chicago Railroad Company. The alias summons, dated July 23, 1874, was served, July 31, 1874, on R. C. Meldrum as agent. The original declaration was filed August 10, 1874, to which the general issue was pleaded. The first trial was had in April, 1876, and resulted in a verdict of $3000. A new trial was granted. The second trial took place in November, 1876, and resulted in a verdict of $4000. A new trial was again granted. The third trial began on March 26, 1877, but on March 27, 1877, leave was given to plaintiff to amend by substituting the Pennsylvania Company in place of the Pittsburgh, Fort Wayne and Chicago Railroad Company, a juror was withdrawn and the cause continued. The summons issued and dated on March 27, 1877, was served, on March 28, 1877, on the Pennsylvania Company by reading to R. C. Meldrum, agent.

March 27, 1877, an amended declaration was filed, consisting of five counts, to which The Pennsylvania Company filed two pleas: first, general issue, and second, statute of limitations, the latter plea being that action did not accrue within two years next before suit was brought. To the second plea four replications were filed, each of which was demurred to, and demurrer sustained as to second and third and overruled as to first and fourth. Issue was joined on the first replication and two rejoinders were filed to the fourth. The rejoinders were demurred to, but the demurrer was overruled and plaintiff elected to stand by it. June 4, 1877, an order was entered

substituting the Pennsylvania Company for the Pittsburgh, Fort Wayne and Chicago *Railroad* Company.

In September, 1877, a third trial was had, resulting in verdict and judgment for $3000. An appeal was then taken to the Appellate Court, where the judgment was reversed and the cause remanded. The mandate was filed in October, 1880. Afterwards in January, 1885, leave was granted to plaintiff to withdraw all replications then on file and to file new replications to the second plea, upon the first of which issue was joined, and to the second and third of which rejoinders were filed and demurred to. A fourth trial was begun in September, 1885, but plaintiff withdrew a juror and the cause was continued. The fourth trial was, however, again begun and finished in November, 1886, and resulted in verdict and judgment for $5000. The latter judgment has been affirmed by the Appellate Court, whence it comes before us by appeal.

The first of the new replications to the second plea averred, that the defendant, The Pennsylvania Company, was a foreign corporation possessed of and operating solely and exclusively the Pittsburgh, Fort Wayne and Chicago Railroad, extending from Chicago to Pittsburgh, and all the cars etc., and the servants etc., running and operating same were the servants etc., of the defendant, and the causes of action mentioned in the declaration were solely caused by the negligence of defendant's servants etc.; that Meldrum was local and general agent of defendant in Chicago, and, on July 3, 1874, plaintiff sued out summons and impleaded defendant in the name of the Pittsburgh, Fort Wayne and Chicago Rail*road* Company (the said Pennsylvania Company being known and reputed as the Pittsburgh, Fort Wayne and Chicago Railroad Company); that the alias summons against defendant in the reputed name of Pittsburgh, Fort Wayne and Chicago Railroad Company was served, July 31, 1874, on Meldrum as agent of Pennsylvania Company; that the Pennsylvania Company appeared by its solicitors and, without pleading in abatement,

pleaded to the merits etc. The replication then sets forth the trials in April and November, 1876, the amendment and substitution of March, 1877, the issuance of summons in March, 1877, against the Pennsylvania Company and its service on Meldrum, as agent of that company, etc., and concludes as follows: "And so plaintiff says this suit is the same suit commenced against defendant in name of Pittsburgh, Fort Wayne and Chicago Railroad Company and that said causes of action accrued within two years before commencement of suit."

If the suit had been begun against the Pennsylvania Company by that name, it was undoubtedly commenced in time to escape the bar of the statute. The theory of the appellant is, that the action, having been begun against the Pittsburgh, Fort Wayne and Chicago Railroad Company, was not begun against the Pennsylvania Company, and that the bar of the statute was complete as to the latter company because it was not made a party until 1877, more than two years after the cause of action accrued. To answer this position appellee contends, that the Pennsylvania Company was the company sued in the first place, but that it was merely sued by the wrong name, to-wit: by the name of the Pittsburgh, Fort Wayne and Chicago Railroad Company.

The law undoubtedly is that, where the real party in interest and the one intended to be sued is actually served with process in the cause, even though under a wrong name, he must take advantage of the misnomer by plea in abatement in such suit; and, if he does not, he will be concluded by the judgment or decree rendered the same as if he were described by his true name. (*Pond* v. *Ennis*, 69 Ill. 341.) If the Pennsylvania Company was the real party sued and served, though by the wrong name, it should have pleaded the misnomer in abatement. It did not do so. The first plea filed was to the merits.

The issue made upon the plaintiff's replication to defendant's second plea was whether or not the Pennsylvania Company

was sued and impleaded by a wrong name and served with summons under a wrong name. The issue thus made was one of fact and was submitted to the jury along with the other facts. This question of fact, no less than the other questions of fact, is settled and determined, so far as we are concerned, by the judgment of the Appellate Court.

Defendant, upon the trial, introduced no evidence whatever under either plea. All the proof in the record was put in by the plaintiff. The latter called to the stand and examined several of appellant's officers, agents and attorneys. It appeared from their testimony, that foreclosure proceedings were instituted against the Pittsburgh, Fort Wayne and Chicago Rail*road* Company in 1867 or at some date prior thereto; that the road was sold out under decree in such proceedings and purchased by the Pittsburgh, Fort Wayne and Chicago Rail*way* Company, which was thenceforward its owner; that thereafter the Pittsburgh, Fort Wayne and Chicago Rail*road* Company ceased to do business, ran no cars, operated no road and simply retained an organization for the purpose of closing up its affairs; that the Pittsburgh, Fort Wayne and Chicago Rail*way* Company operated the road until June 7, 1869, and then leased it to The Pennsylvania Railroad Company, which latter company assigned the lease in 1870 or 1871 to the appellant, The Pennsylvania Company; that the appellant was operating the road and running the cars, when the accident occurred and when the suit was brought; that the cars on the track at that time were marked P. Ft. W. and C. R. R. and R. W.; the sign-boards were marked P. Ft. W. and C. Co.; the initials, P. Ft. W. and C. Ry. were on the locomotives; the same lettering was on the windows of the freight and ticket offices, though the name of the Pennsylvania Company was also on the transom over the door and on some of the windows; that Meldrum was general freight agent of appellant; that the officers of appellant were consulted about the accident and made reports in reference to it to the main office

in Pittsburgh; that appellant's attorneys filed the original plea and defended the original suit etc. There was also testimony tending to show, that the plaintiff intended to sue the company, which was running the cars at the time the injury was committed and which was employing the servants charged with the negligence complained of; and it is undisputed that that company was none other than the appellant.

This testimony, which was strenuously objected to by appellant's counsel, was competent as bearing upon and tending to prove the issue of fact made upon the replication to the second plea. Indeed, it would seem to have been difficult for any ordinary man to find out just what name, among the many names made use of, was the real name of the company, whose servants were in charge of the cars and the tracks at the time appellee was injured.

We do not think that the objections, made by appellant to the instructions which were given upon the subject of the plea of the statute of limitations, are well taken. These objections fall with the objections to the testimony already referred to. The instructions in relation to the plea were based upon the testimony tending to show the use of the wrong name, and merely told the jury in substance that the statute of limitations did not apply, if the facts set up in the replication as above stated should be found from the evidence to be true.

While the Pittsburgh, Fort Wayne and Chicago Rail*way* Company, appellant's lessor, may have been liable for the injury, yet appellant, the lessee, was also liable. The Rail*way* Company was not sued. The defendant originally sued was called the Pittsburgh, Fort Wayne and Chicago Rail*road* Company. As the corporation formerly known by that name was virtually defunct and existed only to wind up old business and not to attend to new business, appellant's officers and agents could not have supposed that corporation to have been the defendant intended to be sued, when service was had upon appellant's own representative in Chicago.

The seventh instruction given for plaintiff begins with these words: "If the jury believe from the evidence that a flagman of the defendant *improperly and inopportunely* signaled the plaintiff's team" etc.   This language is criticized upon the alleged ground, that it bases the right of recovery not upon the negligence or carelessness of defendant's servant; but upon the question whether or not such servant ·performed his duty in an improper and inopportune manner.   The words "carelessly" and "negligently" are in the declaration, and, if they had been added to the words used in the instruction, the latter would have been more technically accurate.   But we do not think it was sufficiently inaccurate to mislead the jury.

"Improper" means "not fitted to the circumstances."   "Inopportune" means "unseasonable in time," or "at the wrong time."   If the flagman signaled to the plaintiff to come on, when the circumstances were such as to require him either not to signal at all or to signal for a further waiting, or if the flagman signaled to plaintiff to come on at a time when a train, unseen by plaintiff, but which the flagman was bound to observe, was moving near and directly towards the team, then such flagman was guilty of negligence in the performance of his duty.   Moreover, the fifth instruction had called attention to the case of one person being put in peril by the "negligence and misconduct" of another, and had directed inquiry to the question whether the plaintiff, in the exercise of ordinary care, had been compelled by "the negligence of the defendant" to jump from his buggy.

The seventh instruction is also objected to as basing the right of recovery solely upon the action of the flagman, and not upon the action of the engineer in backing the locomotive and blowing the whistle.   Inasmuch as the original declaration attributed the injury to the moving and whistling of the locomotive in the rear of the team and to no other cause, while the amended declaration, filed in 1877, added the improper

signaling of the flagman as a further cause of the injury, it is, therefore, claimed that the amended declaration set up a new cause of action which came within the bar of the statute. Both declarations claim damages for the same injury and for the same fright to plaintiff's horse. Without, however, passing upon the question whether the case comes within the principle announced in *Illinois Central Railroad Co.* v. *Cobb*, 64 Ill. 128, it is sufficient to say that the negligence of the flagman and the negligence of the engineer are separately averred in separate and distinct counts, though they are also charged together in one of the counts, and that the plea of the statute of limitations is to the whole declaration. Where separate causes of action are set up in separate counts and defendant pleads the statute to the whole declaration, plaintiff is entitled to recover if one of his causes of action is not within the bar. (1 Chitty's Pl. 546; *Perkins* v. *Burbank*, 2 Mass. 81.) The evidence tends to establish negligence on both of the grounds mentioned in the amended declaration. To justify him in making the point now raised, the defendant should have pleaded separately to that portion of the declaration which has reference to the conduct of the flagman.

The ninth instruction given for the plaintiff tells the jury that, if they "find the defendant guilty," they shall assess his damages etc., and then proceeds to state the elements that may be taken into consideration in fixing the amount of the damages. In regard to this instruction counsel for appellant says: "The amount, which the jury are thereby allowed to assess, is not limited to *any belief* on their part as to what the testimony shows." The criticism is not warranted. The enumeration of such effects of the injury, as may be compensated for in damages, closes with the words, "as shown by the testimony." Previous instructions had stated that the defendant would be guilty, if certain facts should be found from the evidence to be true. The finding of the defendant guilty, as

6—125 Ill.

specified in the ninth instruction, presupposed a belief from the evidence in the truth of the facts referred to in such previous instructions.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*