[Civil No. 3987. Filed June 13, 1938.]

[80 Pac. (2d) 397.]

R. E. CANION, Appellant, v. SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

Messrs. Marks & Marks, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee.

LOCKWOOD, J.—R. E. Canion, hereinafter called plaintiff, brought suit against Southern Pacific Company, a corporation, hereinafter called defendant, for damages to a certain truck owned by plaintiff, caused by the alleged negligence of defendant. The case was tried to a jury, and both plaintiff and defendant presented evidence and rested. Thereafter, defendant moved for an instructed verdict in its favor, which motion the court granted, and judgment was duly rendered in favor of defendant.

The only question raised by the assignments of error is whether there was sufficient evidence in the case to justify the submitting of it to the jury. The testimony taken in the strongest manner in behalf of plaintiff, as it must be taken when a motion for a directed verdict in favor of defendant is granted, shows the following facts:

Plaintiff is a general contractor, operating his trucks under a contract carrier's permit issued by the Arizona Corporation Commission. For some time before the accident, he had a contract to deliver sand and gravel to a concrete mixer approximately 150 feet south of the tracks of defendant, near a crossing some 22 miles west of Phoenix. At the point of the crossing, defendant's tracks run east and west and are intersected by an ordinary dirt road running north and

south.   Shortly before 11 o'clock on the evening of the 6th of March, 1936, plaintiff's son had driven a truck loaded with sand and gravel across the tracks at the crossing in safety, although he had heard the whistle of a train to the east and had observed its headlight some two miles away.   In proceeding to the crossing over the dirt road this truck had raised and left behind it such a cloud of dust that the driver of a second truck, which is the subject of this suit, who was also proceeding southward to make a delivery to the mixer, was so enveloped in dust that at times he could not see more than four or five feet ahead of him.   This crossing was well known to the driver of the demolished truck, as he had previously made many trips over it to and from the mixer, and he knew that he was crossing defendant's main line, on which many trains traveled both day and night.   Although as he neared the crossing he was enveloped in a heavy cloud of dust, he did not stop the truck to observe whether a train was approaching, but merely slowed down.   Just north of the crossing he shifted into low gear, and at the same time he saw a light which he assumed was from the truck which had just preceded him over the crossing.   As he drove on the track, he heard a whistle, and looking up, saw an engine about two hundred feet east of the crossing.   Seeing the certainty of a collision, he abandoned his truck on the track and leaped to safety.   The train was traveling between sixty-five and seventy miles an hour at the time it struck the truck and completely demolished it.   There is no question as to the foregoing facts, but we leave certain disputed matters for discussion at a later portion of this opinion.

There are six things alleged in plaintiff's complaint which he claims were responsible for the accident. They are stated by plaintiff in his brief, as follows:

" . . . the defendant . . .

"(1) Caused its train to approach the crossing at a dangerous rate of speed, to-wit: approximately sixty miles an hour.

"(2) Failed and omitted to keep its locomotive and train under proper control so that it could have stopped in time to avoid the collision.

"(3) Failed and omitted to keep a lookout for automobiles or trucks passing over said crossing.

"(4) Failed and omitted to ring the bell on said locomotive at a distance of not less than eighty rods from said crossing and up to said crossing, as required by Para. 644, R. C. A. 1928.

"(5) Failed and omitted to cause a steam whistle on said locomotive to sound at a distance of eighty rods from said crossing and up to said crossing as required by Para. 4702, R. C. A. 1928.

"(6) Failed and omitted to maintain a watchman or an automatic signal or other appliance to warn persons in motor vehicles of the approach of its locomotive or train at said crossing."

If any of these acts constitute negligence in the eyes of the law, and if there is evidence in the record which reasonably sustains a conclusion that such negligent act did occur and was the proximate cause of the destruction of the truck, the court erred in directing a verdict. Let us consider, first, which of the acts alleged to have caused the accident do, as a matter of law, constitute negligence, and, if any of them do, whether the evidence would sustain a conclusion that such act occurred.

■■ There has been a good deal of confusion as to the general duty imposed upon one who voluntarily goes upon a railroad track. We have discussed this question in the case of *Southern Pac. Co.* v. *Fisher,* 35 Ariz. 87, 274 Pac. 779, and quoted approvingly the following language taken from *Robison* v. *Oregon-Washington R. & Nav. Co.,* 90 Or. 490, 176 Pac. 594:

" 'If from a place of safety on his way, the traveler in control of the vehicle in which he is riding can ob-

tain a view of the coming train, he must look upon
the course of the train from that point, and this re-
sponsibility is constant until the danger is past; that
is, until he is safely across the railway track. The
duty is constant because the danger is incessant. In-
stead of being intermittent it grows as the traveler gets
near the crossing and reaches its climax only as he ac-
tually crosses the track in his passage. This obliga-
tion he owes not only to himself, but also to those on
the train, whether passengers or the laborers employed
in its operation. He must not allow his selfish little
convenience to override this duty so well grounded in
common sense.

" 'All the precedents make it incumbent upon the
traveler both to look and listen. Neither of them can
be eliminated, without its use is practically impossible.
The law does not excuse him from exercising both of
them, unless there is no reasonable opportunity for
that purpose. There is quite as much reason for his
stopping so he can see as for stopping so he can hear,
if there be any zone of safety from which he can see,
and there are obstructions which prevent him from
seeing a moving train without halting in that zone.' "

And in *Southern Pac. Co.* v. *Shults,* 37 Ariz. 142,
290 Pac. 152, we approved of the doctrine laid down
by the Supreme Court of the United States in *Balti-
more & O. R. Co.* v. *Goodman,* 275 U. S. 66, 48 Sup. Ct.
24, 72 L. Ed. 167, 56 A. L. R. 645. That court used
the following language (page 25) :

" . . . When a man goes upon a railroad track he
knows that he goes to a place where he will be killed
if a train comes upon him before he is clear of the
track. He knows that he must stop for the train not
the train stop for him. In such circumstances it seems
to us that if a driver cannot be sure otherwise whether
a train is dangerously near he must stop and get out
of his vehicle, although obviously he will not often be
required to d ) more than to stop and look. It seems to
us that if he relies upon not hearing the train or any
signal and takes no further precaution he does so at
his own risk. If at the last moment Goodman found
himself in an emergency it was his own fault that he

did not reduce his speed earlier or come to a stop. It is true as said in *Flannelly* v. *Delaware & H. Co.,* 225 U. S. 597, 603, 32 Sup. Ct. 783, 56 L. Ed. 1221, 1222, 44 L. R. A. (N. S.) 154, that the question of due care very generally is left to the jury. But we are dealing with a standard of conduct, and when the standard is clear it should be laid down once for all by the Courts.''

A similar situation arose in *Humphrey* v. *Atchison T. & S. F. Ry. Co.,* 50 Ariz. 167, 70 Pac. (2d) 319. The court gave the following instruction (page 176):

''You are instructed that a railway track is of itself a warning. It is a place of danger. It can never be assumed that cars or trains are not approaching on a track, or that there is no danger therefrom. It is, therefore, the duty of every person who approaches a railroad track to exercise proper vigilance to ascertain and to know whether any trains or cars are approaching thereon before attempting to cross thereover. Proper vigilance requires every such person to look and listen before going upon said track or so close thereto as to be in danger.''

It was urged that the rule laid down there was too rigid, and we said:

''A railroad track of itself is unquestionably a warning of danger, and it is the duty of every person who sees such a danger signal to look and listen before going on the track, and thus putting himself in what may at any time become a situation of extreme danger. This does not excuse the operators of the train from also exercising due care, nor does the instruction intimate that it does. It merely lays down the duty of those who go upon railroad tracks.''

With the rule set forth in these cases as to the relative duties and rights of those who go upon a railroad track and the company which is operating trains upon the same tracks, let us consider the alleged acts of negligence. The evidence shows that the accident occurred in a sparsely settled agricultural district, some twenty-two miles west of the city of Phoenix, and

that the train which destroyed the truck was a through passenger train. It is too well known for us to refuse to take judicial notice of the fact that trains of this nature are universally scheduled to travel at a high rate of speed, and particularly so in sparsely settled and outlying country districts. If such speed in such districts were of itself negligence, there can be no doubt that the various railroad commissions, which are so zealous in guarding the rights of the public, would have prohibited a speed so universally employed. We are clearly of the opinion that the admitted speed of the train at the time and under the circumstances was not, as a matter of law, negligence unless it were shown affirmatively that there were some circumstances existing at the time which should have caused the engineer to slacken his speed. There was no evidence of this nature.

██ The second alleged act of negligence is a corollary of the first. If the train in question was running at a reasonable rate of speed under all the circumstances, it was not necessary for the engineer to keep it under any better control than any other train running at that speed. Here again, in order to show negligence, it is incumbent upon the plaintiff to show that there were some special circumstances existing which prevented the engineer from stopping the train sooner than he did. There is no evidence that the most careful and prudent engineer could have stopped the train more quickly than it was stopped.

The third alleged negligence is that the engineer failed and omitted to keep a lookout for automobiles and trucks passing over such tracks. There was not the slightest evidence that the engineer of the train did not use reasonable care in watching for automobiles.

██ The sixth alleged act of negligence is that the defendant failed to retain a watchman or automatic signal at the crossing in question. There is no sug-

gestion that there was any order or regulation of either the Interstate Commerce Commission, or the Arizona Corporation Commission, requiring a watchman or automatic signal to be maintained at the crossing in question, and unless there is affirmative evidence showing that reasonable care would require such warning to be maintained, we think it was not negligence for the railroad company to fail to maintain a watchman or automatic signal at the crossing. The proper authorities have the power, in case they think a crossing is particularly dangerous, to require special precaution to be taken by the railroad company at such crossing, but in the absence of a regulation to that effect, we think the failure of the company to guard a crossing in that manner is not, as a matter of law, negligence.

Nor, indeed, does plaintiff insist very seriously in his brief that the acts which we have just discussed, as a matter of law, do constitute negligence, although he by no means admits that they do not. The principal acts of negligence relied upon were a failure to blow a whistle or ring a bell before reaching the crossing. Sections 644 and 4702, Revised Code of 1928, read as follows:

"§ 644. *Bell on locomotive; use at crossings.* Every railroad corporation shall cause a bell of at least twenty pounds weight to be attached to each of their locomotives, and shall cause the same to be rung at a distance of not less than eighty rods from the crossing of any public street, road or highway, under a penalty of one hundred dollars, to be recovered by action in the name of the state, one-half of which shall be paid to the informer; and said corporations shall also be liable for all damages which may be sustained by any person by reason of a non-compliance."

"§ 4702. *Failure of engineer to give warning at public crossing.* Every person in charge of a locomotive engine, who before crossing any traveled public way, omits to cause a bell to ring or steam whistle to

sound at the distance of at least eighty rods from the crossing, and up to it, is guilty of a misdemeanor.''

It will be seen therefrom that failure to ring a bell in the manner provided by the two sections is negligence *per se.* *Arizona Eastern R. Co.* v. *Cox,* 27 Ariz. 469, 233 Pac. 1102. If, therefore, the evidence raises a reasonable conflict as to whether, at the time of the accident, a bell was rung, the case should have been submitted to the jury. *Davis* v. *Boggs,* 22 Ariz. 497, 199 Pac. 116. The evidence on behalf of plaintiff on this point consists of the testimony of the drivers of the two trucks. R. E. Canion, Jr., testified on this point as follows:

''Q. Now, Mr. Canion, let me ask you this, when you were coming south on the county road, you were coming from the north, were you not, when you were still north of the tracks, did you hear or see any train? A. I saw a faint light way to the east, and heard a slight whistle, something that sounded like a whistle.

''Q. How far do you think it was away then? A. It looked to me to be about two miles.

''Q. And then you crossed and you faced north? A. Yes.

''Q. Now, then, do you know whether he whistled again while you were there facing north after you had crossed the tracks along the road? A. Not until it got right on top of this crossing.

''Q. Do you know whether it rang a bell? A. No, I heard no bell at all.''

While R. J. Warren, the driver of the truck which was damaged, gave the following evidence:

''Q. And when did you first see the train or hear it? A. When I was on the track I guess and the light showed on me, I looked like that, and the train started blowing, that is the first time I saw it.

''Q. Did you hear any bell ringing? A. No sir.

''Q. Did you hear any whistle blowing? A. No, sir, not until it screamed, kind of looked like over me.

''Q. It was right on you when it screamed over you, is that what you said? A. That is back of the cattle

guard a little piece, but the light was high enough that I realized it was a train.''

It will be seen from this transcript that the testimony is definite and direct that neither one of them heard a bell rung, but there is no positive testimony on their part that the bell was not rung. On the other hand, the engineer and fireman of the train, who were peculiarly in a position to know whether the statute had been complied with or not, stated positively that the bell was rung in the manner and for the time required by the statute. We, therefore, have the negative testimony of Canion, Jr., and Warren, as opposed to the positive testimony of Adams and Miller, the engineer and fireman of the train. We have discussed the value of conflicting positive and negative testimony in the cases of *Davis* v. *Boggs, supra, Southern Pac. Co.* v. *Fisher, supra,* and *Illinois Bankers' Life Assn.* v. *Theodore,* 44 Ariz. 160, 34 Pac. (2d) 423, and have held that mere negative testimony is not sufficient to prevail as against positive and unimpeached affirmative testimony.

It is urged by plaintiff that since the witnesses who testified as to the ringing of the bell were employees of defendant, their evidence is unworthy of credence, and should not be considered. It is of course true that if there was a direct conflict in affirmative evidence between the witnesses, the jury would be entitled to take into consideration the interest of such witnesses, both for the plaintiff and for the defendant, in the result of the case, but we think it is going too far to assume, as a matter of law, that all railroad engineers and firemen will commit willful and deliberate perjury merely because their employer has been sued and their testimony may affect the verdict. In the present case, as we have pointed out, there is no real conflict in the evidence, for the one is negative and the other affirmative in its character, and all of the wit-

nesses may have been, and doubtless were, testifying the literal truth. Plaintiff's witnesses doubtless did not hear the bell rung, but this is not at all inconsistent with the fact testified to by defendant's witnesses that it actually did ring. Since there was no competent evidence to establish any acts on the part of defendant which, as a matter of law, would constitute negligence, the trial court properly instructed a verdict in favor of the defendant.

There are a number of other matters argued in the briefs, but we think we need not discuss them.

Judgment affirmed.

McALISTER, C. J., and ROSS, J., concur.