165 P.2d 167

ATCHISON, T. & S. F. R. CO. et al.

v. HICKS.

No. 30.

Supreme Court of Arizona.

Jan. 7, 1946.

Fennemore, Craig, Allen & Bledsoe, of Phœnix, for appellants.

Wilson & Wilson, of Phœnix, for appellee.

MORGAN, Judge.

On April 6, 1943, during the noon hour, plaintiff was driving his automobile in a northerly direction on the public highway known as lateral 15, which at a point between Glendale and Phœnix intersects and crosses at an angle of 45 degrees defendant railway company's main line track and four parallel tracks immediately to the northeast, some of which are used for switching. In driving over the intersection, plaintiff's automobile was struck by the company's regular passenger train proceeding towards Phœnix on the main line, and he was seriously and permanently injured.

Plaintiff alleged that the proximate cause of the collision and resulting injuries was the negligence of defendants in the following particulars. Defendant Steyaert, a company brakeman engaged in switching cars at the intersection, and who had a clearer view of the main line track towards the north than plaintiff, signaled him to cross over, and plaintiff, relying upon the position of the brakeman and his ability to view the tracks, proceeded to cross. When plaintiff had reached and was driving over the main line track, the brakeman signaled him to back up. Obeying this instruction, plaintiff stopped, but before he could comply with the latter signal his automobile was struck by the on-coming passenger train which was then being operated by defendant Pentland, the engineer, at a high and excessive rate of speed, in excess of 60 miles per hour, "which speed was excessive by reason of the obstruction at said intersection and the traffic and use of said intersection at said time and place."

Plaintiff's claim of negligence is bottomed upon the concurring effects of the high and excessive speed of the train, the failure of defendant Pentland to slow the train, and the negligence of defendant Steyaert in signaling plaintiff to proceed into the intersection, and then when he had reached a place of danger to stop him from proceeding further.

Due to the effects of the injury, plaintiff has no recollection of the collision nor of anything that occurred immediately preceding or following the injury. The testimony was conflicting and unsatisfactory. However, there are some facts about which there is no controversy. At about the time plaintiff was driving up the incline to cross over the railroad tracks, Steyaert was en-

gaged with a switching crew in moving cars on the most northeasterly track. These cars were moved in such a manner as to leave the crossing unobstructed. Steyaert had a better view of the main line track than plaintiff could have had if the latter was still on the incline which led up to the tracks. Plaintiff was a truck driver by occupation, and an experienced driver.

The train operated by Pentland, regularly due in Phœnix in the morning, running on a revised schedule three minutes late, had passed Alhambra station, and was proceeding through an area congested by five tracks, a large number of railroad refrigerator cars, and storage and loading structures along the right of way. The range of vision of the engineer was not given, but he did not see plaintiff's car until he was about 600 feet from the point where the highway crosses the railroad. It is a much used highway, being the main artery of traffic to the largest factory operating in the vicinity. Rain was falling at the time. When the engineer saw plaintiff's automobile on the track, he immediately applied his brakes, this at a distance of about 500 feet from the point of collision. In addition to the engine and tender, there were seven coaches in the train, each 80 feet in length. It was not brought to a complete stop until the rear was approximately three car lengths beyond the crossing. The evidence discloses that from the time the engineer saw plaintiff's car and applied the brakes, the train traveled approximately a quarter of a mile before it was brought to a stop.

Plaintiff's case rests principally upon the testimony of the witness Hasse, as corroborated by the testimony of defendant Pentland and the fireman of Pentland's engine. Hasse's testimony taken in the light most favorable to plaintiff, discloses that just after the crossing had been opened by the switching crew, and at the time Steyaert dropped off the cars at the crossing, he saw plaintiff's car pulling up the incline. He saw the brakeman give a signal for the car to come ahead, and when the car had approximately straddled the main line track, he saw the brakeman signal the car to go back; that it stopped on the track, but before it could be backed off it was struck by the train. He also testified that the train "was coming pretty fast". Hasse's testimony is not too clear but he did say that when the first come-on signal was given, plaintiff "was coming right up the incline. He was coming up the incline and just as he was ready to come up on the tracks he gave him the signal * * * to come ahead."

The engineer testified that he first saw the car when his train was about 600 feet away, and that it was driving onto the track at that time. We quote:

"A. I saw this car driving on the track just as we got to the crossing.

"Q. Avenue J, is that correct, is that when you saw Sam drive on the track? A. Yes."

Avenue J is approximately 450 feet north of the point of impact. The fireman Queen testified:

"Q. When did you see the car before the accident? A. Well, I saw it just at the time we passed Avenue J and about the same time that the engineer went into action, you know, the last whistle and also the emergency application of air.

"Q. Where was the car when you saw it? A. Well, it looked to me as if it had just got up on the track because he made a little lurch just as I saw it.

"Q. As far as you know, the car was still moving when you saw it? A. Apparently it just came to a stop as I saw it, because I saw it give a little lurch."

The testimony of defendant Steyaert tended to show that plaintiff drove his car up onto the main line track and stopped astride this track until the switching crew had cleared the northeasterly parallel track. He testified that when he dropped off the car being switched, plaintiff's car was standing on the main line track, that he heard the train coming and immediately signaled plaintiff to move his car back off the track. He made no come-on signal.

Motions for directed verdict were denied by the trial court. The jury found a verdict for plaintiff. Defendants' motion for new trial was denied, and they have brought this appeal.

Defendants raise two fundamental questions upon which they base error: (1) That the judgment is wholly unsupported by evidence of negligence as charged; (2) that the verdict and judgment do not rest upon any evidence but leave the whole controversy in the realm of surmise and speculation.

It is obvious that if either one of the foregoing contentions is good, the case should be reversed. On the other hand, if the evidence disclosed probative facts from which negligence and responsibility on the part of defendants may be inferred, then the case is one for the jury. If there is any substantial evidence to support the verdict and judgment, they must, under the law which has been frequently applied by this court, be upheld.

We have made a careful examination of all the authorities cited by defendants. The facts and issues here present questions which have neither been directly considered nor decided by the cases cited. It is true that speed alone, in the absence of a statute or regulation restricting the speed of trains at the place of accident, is not negligence. Canion v. Southern Pac. Co., 52 Ariz. 245, 80 P.2d 397, 400. In the instant case, no such statute or regulation is involved. We have repeatedly indicated, however, that speed, taking into consideration other circumstances, may be considered as negligence. In Canion v. Southern Pac. Co., supra, the following appears: "* * * We are clearly of the opinion that the admitted speed of the train at the time and under the circumstances was not,

as a matter of law, negligence unless it were shown affirmatively that there were some circumstances existing at the time which should have caused the engineer to slacken his speed. There was no evidence of this nature."

The general law on the subject of speed at crossings as negligence is well stated in 44 Am.Jur. 753, section 512, Railroads: "While the speed of trains at crossings is not, in and of itself, negligence per se, when considered with other circumstances it may constitute negligence, either as a matter of law, or as such evidence of negligence as will support such a finding by the jury. * * *" This statement is in accordance with the views this court has heretofore expressed. Davis v. Boggs, 22 Ariz. 497, 199 P. 116.

Here the conceded facts are that the engineer did not or could not see plaintiff's danger until the train was near the intersection; the crossing was known to be a bad one, and the view of travelers was obstructed. The evidence is that almost immediately after the engineer saw plaintiff's car he applied the air brakes; but the train was being operated at such a speed that it not only struck the automobile but drove approximately 1,000 feet beyond. The testimony is that the brakes were applied at least 400 feet north of the point of impact, and that the train did not stop until it had traversed approximately a quarter of a mile. Since the engineer did not see plaintiff's car until he was 600 feet above the intersection, the speed which the train was making, as evidenced by the actual occurrence, would prohibit the stopping of the train at the crossing. The engineer also was aware of the rain which would reduce the scope of visibility of any one who might be desirous of crossing the track. Then, too, the train was not running on its regular schedule and its presence on the track at that time would not be anticipated. In the circumstances existing and as shown by the evidence, the speed of the train might be evidence of negligence under the rules mentioned.

If, therefore, under the circumstances defendant's train was being operated at a negligent rate of speed, the rule applied by this court in the following cases would not control: Morenci Southern R. Co. v. Monsour, 21 Ariz. 148, 185 P. 938; Southern Pacific Co. v. Fisher, 35 Ariz. 87, 274 P. 779; Southern Pacific Co. v. Shults, 37 Ariz. 142, 290 P. 152; Humphrey v. Atchison, T. & S. F. R. Co., 50 Ariz. 167, 70 P.2d 319; Canion v. Southern Pacific Co., supra. On the assumption that the speed amounted to negligence, as a matter of law, plaintiff could recover unless barred by contributory negligence. For the obvious reason that contributory negligence on the part of plaintiff is foreclosed by the jury's verdict, under the constitution, that question is not before us. It is our view, taking all the circumstances into consideration, that whether the train was being operated at a negligent rate of speed was for the jury. Lindekugel v. Spokane, P. & S. R. Co., 149 Or. 634, 42 P.2d 907, 99 A.L.R.

721; Thrasher v. St. Louis & S. F. R. Co., 86 Okl. 88, 206 P. 212; Hicks v. New York, etc., R. Co., 164 Mass. 424, 41 N.E. 721, 49 Am.St.Rep. 471, Annotation p. 477; 7 Ann.Cas. 988, Annotation; 44 Am.Jur. 753, Railroads, § 512; Hoffman v. Southern Pacific Co., 101 Cal.App. 218, 281 P. 681, 688, wherein it was said: " * * * Where physical objects like buildings, embankments, or dense growth of trees, or when the din and commotion of a storm prevent one from hearing to good advantage the approach of a train, these may be taken into account, together with the rapid speed of the train, in determining whether it was negligently traveling at an excessive rate of speed under the circumstances. So also excessive speed of a train traveling through a crowd of people or in a thickly populated portion of a city may constitute negligence. Under such circumstances, it becomes a question for the jury to determine whether the operation of the train under such condition and circumstances amounts to negligence. (Citing cases.)"

Taking into consideration the distance the train ran after the brakes were applied, and as was said in Lindekugel v. Spokane, P. & S. R. Co., supra [149 Or. 634, 42 P. 2d 912], in the absence "of any estimate by experienced trainmen as to the distance within which such a train should make an emergency stop", the question of speed was for the jury and "are circumstances from which the jury could have drawn an infer-ence of a higher rate of speed than that estimated by the trainmen."

Plaintiff, in addition to the negligent speed of the train and the consequent inability of the engineer to stop, relies on the negligent acts of defendant Steyaert in signaling him to cross over and then in stopping him when he had reached a place of danger. This is based on the claim that Steyaert was in a better position than plaintiff was while driving up the incline to see whether he was in danger. Plaintiff's position is that he had a right to rely on the brakeman's signals, and that Steyaert acted negligently in giving the signals, and that the concurrence of the speed and the brakeman's acts make out a case of negligence for the jury. If the evidence warrants a finding of facts supporting plaintiff's position in this respect, the verdict of the jury must be upheld.

While the brakeman was not a regular flagman for the intersection, it appears from the testimony of plaintiff's witness Hasse that he acted in that capacity by giving the come-on signal when the intersection was clear of the cars being switched. Having undertaken the duty of a flagman, he and his employer would be bound by his acts, and, therefore, his conduct must be measured by the general or usual rules applying to flagmen. It has long been established that a flagman at a crossing is guilty of negligence in the performance of his duty in signaling to a trav-

eler to come on or across when compliance with such signal will place the traveler in a place of danger. Pennsylvania Co. v. Sloan, 125 Ill. 72, 17 N.E. 37, 8 Am.St.Rep. 337; Sweeny v. Old Colony & N. R. Co., 10 Allen, Mass., 368, 87 Am.Dec. 644, Note p. 652; Kleiber v. People's R. Co., 107 Mo. 240, 17 S.W. 946, 14 L.R.A. 613. In any event, the question as to whether, under the circumstances, the flagman's act in giving a wrongful signal constitutes negligence is one for the jury. Roby v. Kansas City Southern R. Co., 130 La. 880, 58 So. 696, 41 L.R.A.,N.S., 355, Note 355 et seq.

While it is well settled that wrongful signals of a flagman may be negligence, or at least is for the jury, the effect of such a signal is another matter entirely. Whether the traveler may rely solely on the signal so as to avoid his duty of looking and listening is a controversial question. 44 Am.Jur. 821, § 567, Railroads. The general rule appears to be that a traveler is only partially relieved from the duty of exercising care in going upon the crossing when doing so pursuant to a signal. Substantially it is a question of fact to be determined by the jury. Polfer v. Chicago, G. W. R. Co., 130 Kan. 314, 286 P. 240; Weston v. Hines, 107 Kan. 625, 193 P. 340; Annotation, 15 L.R.A.,N.S., 803; Annotation, 13 Ann.Cas. 855.

Since the effect of the wrongful signal at the crossing goes only to the question of contributory negligence, which is not before us, what we have just said is only incidental to the main issue. Is there any evidence from which the jury could infer that plaintiff saw and acted on the signals made by the brakeman? Plaintiff has no recollection of what occurred immediately preceding the accident. Even if the brakeman gave the signals as testified by Hasse, but they were not actually seen and complied with by plaintiff, the brakeman's act would not constitute negligence. Unless plaintiff was misled to his injury, it is obvious that signals made by the brakeman would be unavailing as a basis of negligence. This brings us to the real issue here. From the facts as shown by the testimony, was the jury at liberty to draw an inference that plaintiff both saw and acted upon the signals given him by the brakeman.

In Starkweather v. Conner, 44 Ariz. 369, 38 P.2d 311, 314, we said: "Inference is a deduction drawn from certain facts by the reason * * *"

Inference is defined in Black's Law Dict., 3d Ed., as follows:

"A truth or proposition drawn from another which is supposed or admitted to be true. A process of reasoning by which a fact or proposition sought to be established is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted. (Citing cases).

"An inference is a deduction which the reason of the jury makes from the facts

proved, without an express direction of law to that effect. (Citing cases)."

An inference is a reasonable conclusion or deduction drawn by reason from facts or premises established by proof. Wollard v. Peterson, 143 Kan. 566, 56 P.2d 476. It may be said to be nothing more than a permissible deduction from the testimony. Cogdell v. Wilmington & W. R. Co., 132 N.C. 852, 44 S.E. 618.

Quoting from Words and Phrases, Perm. Ed., vol. 21, page 273: "An 'inference' being but a reasonable deduction and conclusion from facts proven, it being the peculiar and exclusive province of the trial court or trial jury in the first instance to make such a finding of fact, which it is the especial right of every litigant to have determined, the Supreme Court sits only to review inferences, as other findings of fact, with the power to set them aside as a matter of law only when not sustained by adequate evidence. Ryder v. Bamberger, 172 Cal. 791, 158 P. 753, 756."

We have already given a rather full statement of the pertinent facts. It is our view, under the rules mentioned, that sufficient facts were adduced to justify the jury in believing that while plaintiff was driving up the incline, he saw Steyaert's come-on signal and believing that it was safe to cross proceeded over the main line track. He then received the second signal from Steyaert to back up, and before he could complete this maneuver his car was struck by the passenger train traveling at such a rate of speed as to make it impossible to stop.

It was for the jury to determine how much or how little of the evidence adduced by the parties, or what part of the testimony of any particular witness, it should believe. Our examination of the transcript of the testimony discloses the probative facts mentioned and under which the jury would have a right to make inferences resulting therefrom. From the testimony, the plaintiff was in a position to see any signals given. He was possessed of all his faculties. He both proceeded and stopped in conformity with the signals as given. We might have come to a different conclusion, but this court and the trial court where the case was submitted to the jury are not the triers of the facts. The verdict of the jury must be upheld if based upon competent testimony or upon proper inferences to be drawn from the testimony of probative facts. The inferences mentioned here, being the reasonable conclusions or deductions from the probative facts testified to, are not subject to the rule against conjecture, surmise and speculation.

The jury had a right to presume that plaintiff approached the track in the exercise of due care. In Davis v. Boggs, supra, a crossing case where the action involved damages for death and there was no evidence that the deceased looked and listened, we said [22 Ariz. 497, 199 P. 120]: "The law presumes that the

24

injured party was in the exercise of due care until the contrary is made to appear. The presumption is founded on a law of nature and has for its motives the fear of pain, maiming, and death." The jury had a right to assume that plaintiff relied upon the signals as testified by Hasse. We believe that the reasoning of the Supreme Court of Michigan in Patton v. Grand Trunk Western R. Co., 236 Mich. 173, 210 N.W. 309, 310, a similar case to the one under consideration, is in all respects correct, and we quote the pertinent portion as determinative of this phase:

"* * * It was shown by the proof that it was the duty of the rear brakeman, who was left with a part of the train, to not only protect the company's property, but to protect travelers who were seeking to make the crossing from accidents. Aside from this proof, however, we think it was the duty of the brakeman, as a matter of law, to look out for the safety of the traveling public who were attempting to make a passage over the partially blocked crossing, and when he waved the travelers across they had a right to rely on his invitation, unless the danger of so doing was very obvious. The brakeman makes some claim that as soon as he saw the danger he ran from the east end of the caboose to the west and called to plaintiff's decedent to stop, and that he did stop. * * *

"The jury, under the proofs, had the right to assume that plaintiff's decedent went across upon the invitation of the brakeman. He had the right to assume that when he got the invitation to go around the end of the caboose he could do so with safety. It was an invitation which would be accepted by most travelers, but the testimony, being in conflict, was one for the jury."

 It is our view that this case is governed by the rules announced by the Supreme Court of the United States in Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, which were quoted in Apache Ry. Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 150. We said in that case: "All that is required in negligence cases is for the plaintiff to present probative facts from which negligence and the causal relation may be reasonably inferred." That statement applies here. As was said in the Tennant case [321 U.S. 29, 64 S.Ct. 412], "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results. are more reasonable."

The judgment is affirmed.

STANFORD, C. J., and LaPRADE, J., concurring.