LOUIS DONALD LAMBERT *v.* THE CITY OF NEW HAVEN.

MALTBIE, C. J., AVERY, JENNINGS, ELLS and DICKENSON, Js.

Argued June 10—decided July 28—reargued November 5, 1942, before Maltbie, C. J., Brown, Jennings, Ells and Dickenson, Js. —amended opinion filed February 26, 1943.

*Francis J. Moran* and *John E. McNerney,* for the appellant (defendant).

*Louis Feinmark,* with whom was *John A. Mele,* for the appellee (plaintiff).

Ells, J. This is an action brought by a pupil of a public school conducted by the city of New Haven for damages resulting from an injury sustained in falling on an inside stairway of the school building. The complaint alleges various acts of negligence on the part of the defendant city. There is no claim of nuisance. Upon the facts stated in the complaint there was no liability on the part of the city of New Haven, but it did not claim immunity upon the ground that it was engaged in a governmental duty. The case

was therefore tried as a negligence action, judgment was rendered for the plaintiff and the defendant has appealed.

It is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function. Under any ordinary circumstances, for it to compensate one injured by such negligence might well be to use public funds and impose a burden upon its taxpayers for an unlawful purpose, which it has no right to do. *New London* v. *Brainard*, 22 Conn. 553, 556; *Gregory* v. *Bridgeport*, 41 Conn. 76, 86; *Hoyle* v. *Putnam*, 46 Conn. 56, 61. Certainly none of its officers would have power to waive the right of a municipality to any immunity from liability which the law gives it, in the absence of special authority given them by the city. *Nicholaus* v. *Bridgeport*, 117 Conn. 398, 401, 167 Atl. 826. It was stated in the oral argument that the city was insured against liability of this nature, but, if so, that would almost of necessity mean the use of money of the city to pay the premiums for such insurance, which would be open to the objections we have stated; and it would be a doubtful policy to sanction generally the voluntary incurrence of liability by municipalities in such a case in reliance upon insurance, in view of the fact that recovery under such policies might be defeated because of a failure to comply with their terms. The question is not, however, before us on this record, has not been argued and as in any event a new trial must be ordered we leave it with this comment.

The finding, with certain corrections we have made in it, may be summarized as follows: It had snowed during the night, and there was some snow in the schoolyard on the morning in question. Certain selected children acted as monitors, and it was their duty to preserve order among their schoolmates. The

plaintiff, a yard monitor in the boys' yard, entered the building through the boys' entrance some time between 8:30 and 8:40 o'clock and went up the seven-step stairway. An inside monitor, stationed at the top, asked him to get the children remaining in the yard to come into the building. The plaintiff descended the stairway between 8:40 and 8:45, and upon reaching the second step from the bottom slipped on hard-packed snow and fell. Customarily two heavy corrugated steel mats were placed at the foot of the stairway, one in front of and adjacent to the other, each mat being about five feet long and three feet wide. A principal purpose of so maintaining the mats was to allow boys entering the building in the wintertime to scrape the snow from their shoes so as not to track it onto the stairs. The mats were not there on the morning in question. The large number of boys who entered promptly upon the ringing of the first bell at 8:30 tracked snow onto the stairway and it soon became packed down and slippery in some places.

At the time the plaintiff fell, another monitor, with the permission of the school principal, was sweeping the stairway with a broom and removing snow tracked in by the boys from the yard, and had cleaned the top four steps, sweeping the loose snow and digging the hard snow off with the end of the broom without great success. He was on the bottom step at the time of the fall, but intended to go back and remove the hard snow from the three bottom steps. He had gone into the principal's office at about 8:35 and suggested to him that it might be advisable to remove the snow from the steps and was told to do so. The principal had gone to the head of the stairs at about 8:33 and had seen melting snow on the tread of some of the steps, and should have seen that the mats were miss-

ing. There is no finding that the boy who was sweeping the stairs was negligent in the performance of the duty he was undertaking.

The court concluded that the principal was negligent in commissioning the monitor to clean the steps. That the monitor assumed the performance of this duty would not relieve the defendant of its primary responsibility to keep them reasonably safe for the use of its pupils. *Hurlburt* v. *Sherman*, 116 Conn. 102, 106, 163 Atl. 603; *Reardon* v. *Shimelman*, 102 Conn. 383, 386, 128 Atl. 705. If a landowner leaves it to someone else to take precautions in such a situation, it is ordinarily just as though he were himself acting, and the question is, did what was done amount to reasonable precaution, whoever was the actor? In this case the principal did delegate to the monitor the duty of cleaning the stairs. As is conceded in the plaintiff's brief, the city would be entitled to the benefit of anything he did. If what he did amounted to the exercise of reasonable care there would be no liability on the city. *Kristiansen* v. *Danbury*, 108 Conn. 553, 559, 143 Atl. 850; *Sellew* v. *Middletown*, 121 Conn. 331, 333, 185 Atl. 67. There is no finding that the acts of the boy did not amount to the exercise of reasonable care, or that any adult would have done a better job. In the absence of such a finding the city is not liable in this aspect of the case.

The city could act only through agents or instrumentalities. It is not and hardly could be found that it was the duty of the principal himself to sweep the steps. Reasonable care would require that the principal make reasonable use of such faciliites as were reasonably at his disposal to remedy the defect after it became or should have become known to him. *Bjorkman* v. *Newington*, 113 Conn. 181, 184, 154 Atl. 346. The only thing, aside from commissioning the

boy to act, that the record at all suggests might have been done was that the principal should have sent word to the janitor to see to the condition. But there is no finding that, had he done so, the janitor could have been reached and could have, in the exercise of reasonable care and celerity, remedied the trouble before the boy slipped. Hence, if there was negligence in this respect, there is a lack of any finding that it was a cause of the injury. "An act or omission can hardly be regarded as the cause of an event which would have happened if the act or omission had not occurred." *Shaughnessy* v. *Morrison,* 116 Conn. 661, 666, 165 Atl. 553.

It is further claimed by the plaintiff that the principal was negligent in that he permitted an unreasonable length of time to elapse, after he knew or should have known of the presence of the packed snow, before the monitor had been commissioned to sweep the steps. This may well be discussed together with a claim that the principal was negligent in failing to go to the head of the stairs, after the monitor came to his office, and warn the pupils of a danger known to him. The only evidence is that the principal went to the head of the stairway two or three minutes after the ringing of the 8:30 bell, when the boys were beginning to come in, to see if they were behaving. He saw a little snow on the platform and on the steps which was melting. There is no evidence that he saw or should have seen packed snow; there is no evidence that there was packed snow there at that time. He returned to his office and within two minutes the monitor appeared, and did not tell him that the snow was packed and the steps dangerous, as the plaintiff contends, but asked him "if he should sweep off the stairs." The monitor immediately secured a broom and began sweeping. The plaintiff fell sometime be-

tween 8:40 and 8:45. Although the court found that the principal saw or should have seen the snow packed on the tread of some of the steps, this finding was attacked by the defendant, and we find no evidence which reasonably supports it. The duty to take steps seasonably to avert danger is predicated upon knowledge of the danger, or its equivalent; so also is a duty to warn. *Ward* v. *Avery*, 113 Conn. 394, 397, 155 Atl. 502.

The trial court also concluded that the defendant was negligent because its agents did not have the corrugated steel mats in place at the foot of the stairway on the morning in question. The finding is that the plaintiff slipped on a step which was defective, because there was hard-packed snow upon it, and was the cause of the fall; that the snow was tracked in and packed down by boys who had gone up the stairs almost immediately before the plaintiff fell; and that if the mats had been in place the snow would not have been tracked in and packed down. The trial court was not warranted upon the evidence in finding that the defendant's failure to have the mats in place, even assuming that this constituted negligence, caused the accumulation of hard-packed snow on the second step and so caused the plaintiff's fall and injury. There is no evidence sufficient to support a reasonable inference that such was the fact. It is to be noted in this connection that while the court viewed the locus, which, it was agreed, was "in the same structural condition" as at the time of the accident, there is nothing to indicate that the judge either then or at any other time saw the mats in question. The only evidence concerning them is the testimony printed in the record. This shows that they were heavy and made of iron; had holes in them with sharp top edges between; could be rolled up and were flexible; weighed about thirty-

five pounds each and were made of band steel bound together with wire forming half-inch mesh openwork. It is undisputed that they were five feet long and three feet wide. Their thickness does not appear. They were designed for the children to wipe their feet on to save tracking the mud and snow onto the stairs. There is no evidence, however, to indicate how effectively they served this purpose. There was fresh fallen moist snow on the ground in the schoolyard that morning. Apparently from fifty to two hundred boys tramped through the entryway and up the stairs shortly before the plaintiff's fall. It is undisputed that they brought in snow on their shoes. It does not appear that the mats, if in place, would have prevented this from being tracked onto the stairs up to such time as the mats became clogged with snow, or how soon they would have become clogged and so been rendered ineffective. That they would in fact become clogged under such use is shown by the evidence and is also a matter of common knowledge. Upon this record, therefore, it is mere speculation to say that the lack of mats caused the snow to pack on the second step and so caused the plaintiff's fall. There is no evidence that the mats served their intended purpose. The court undoubtedly relied upon its finding that no boy had ever fallen because of packed snow on the stairway when the mats were in place. The record is devoid of any evidence to support the finding.

The trial court also found that the surface of the treads of the stairway was smooth and the noses of the treads were rounded from wear, that the stairway was not provided with any railing to aid a person who might slip thereon and that these conditions caused any accumulations of snow to become more than usually dangerous. There is no finding and no evidence that these conditions of themselves would

have caused the plaintiff to fall. If there was no negligence in any of the respects we have previously discussed, it makes no difference whether the stairs were made more dangerous by these circumstances.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion MALTBIE, C. J., BROWN and DICKENSON, Js., concurred; JENNINGS, J., dissented.