HILLIARD, J.
 

 This is an appeal from judgment in favor of respondent in an action brought by appellant to recover damages resulting from an alleged trespass.
 

 At the time of the unfortunate series of events which ultimately culminated in this litigation, the appellant was engaged in the business of raising chickens on a ranch' near Newberry, California. In order to understand and appreciate the circumstances it is necessary to discuss the factual situation with brevity, but some attention to material details.
 

 . The property occupied by appellant was owned by one DeFlon, who has permitted appellant to utilize the premises as a residence and chicken ranch for some three years prior to this litigation. Obviously, Mr. DeFlon is an individual of rather philanthropic disposition since appellant states that he has made a down payment upon purchase price of the land, is “supposed to buy it,” but does not know whether he will ever make any more payments thereon. This happy situation is apparently agreeable to Mr. DeFlon, who, with the permission of appellant, occasionally uses a small house on the property for living purposes.
 

 Appellant .contends he is not an expert on the subject of raising chickens, but admits that this has been his .source of livelihood for at least 20 years,' and, in fact, as long as he can remember.
 

 
 *Supp. 899
 
 On the date in question, December 21, 1952, appellant had approximately 9,500 young chickens on the ranch, and was raising them for the market. These chickens were in pens or inelosures which were located near the house on the premises occupied by appellant and his wife.
 

 Respondents own and operate a grocery store and tavern east of Daggett on Highway 66 and, with the exception of an inspection service approximately one mile from their place of business, enjoy the distinction of having the last telephone between that point and Daggett, which is some 12 miles distant. It was respondent’s habit and custom to accept telephone messages at his store for his neighbors and to transmit such messages to them. As far as the record discloses, this was a service gratuitously performed as a courtesy and accommodation. In a sparsely settled desert country it is obvious that this neighborly gesture was a logical holdover from the best traditions of the West. Mr. DeFlon had requested respondent to accept and transmit any telephone messages for him, and advised respondent that he might be located at the ranch occupied by appellant.
 

 On December 21, 1952, respondent received a telephone message for Mr. DeFlon and, faithful to his promise, drove to appellant’s ranch about 6 p. m. that evening to inform Mr. DeFlon of the receipt of such message. Respondent’s mode of travel was by Plymouth station wagon, and his route to appellant’s ranch was along Highway 66 to the intersecting county road, thence along that road some distance to a gate marked “Keep Out,” thence through the gate to appellant’s place of residence. Upon stopping his vehicle in front of the house, respondent noted the immediate presence of two dogs who regarded him—or so he concluded—with some suspicion and hostility. Being convinced that the dogs neither wanted his presence nor appreciated his role of Good Samaritan, appellant determined that discretion was the better part of valor. In accord with this plan of action, or inaction, he declined to leave the safety of his vehicle, and summoned the occupants of the house by sounding his horn. This conduct, as the results are described by appellant, caused immediate consternation, panic and confusion upon the part of the chickens who, being unaccustomed to the ordinary perils of traffic and the technical rights of pedestrians, must have believed that Judgment Day had arrived, and in truth it had for 720 of the flock who were crushed and smothered against
 
 *Supp. 900
 
 the wire netting in an effort to escape the unknown danger represented by the blast of the horn.
 

 According to appellant’s complaint the horn was blown “in a loud and unusual manner.” Respondent testified that the horn was standard equipment upon the Plymouth station wagon and, so far as he was advised, capable only of the intensity and volume necessary to meet the exigencies of traffic upon the highway. The lower court availed itself of the opportunity to hear the horn sounded during the trial. Unfortunately, the comments of the trial judge on this subject are not before us.
 

 Suffice it to say, the reaction of appellant’s chickens to the sound of the horn was above and beyond the call of duty as delineated by the Vehicle Code. At the time of this disastrous occurrence appellant and his young son, Billy, were busily engaged in feeding the chickens. After the panic appellant immediately separated the living from the dead, and then determined that 720 chickens had come to an untimely end. According to the testimony the value of the chickens thus lost was $540 and appellant, so grieved, seeks to recover that amount from respondent.
 

 It was the theory of appellant, as set forth in his complaint, that respondent was a trespasser upon the premises, being neither welcome nor expected, and that the damage suffered by appellant was a direct and natural consequence of such trespass. It might be observed at this point that appellant also named respondent’s wife as a defendant in this action. The evidence discloses that she did not participate in any of the transactions, and her guilt must arise by reason of association. No tenable theory is advanced wherein she might be held liable, under the laws of this state, for such conduct on the part of her husband.
 

 A review of the decision of the lower court first involves a determination of the status of respondent at the time that he entered upon the premises occupied by appellant. If he was then a trespasser upon the premises, his liability, if any, would result from all injurious consequences flowing from his trespass, which were the natural and proximate result of his conduct. It would be a harsh rule which penalized respondent for his acts of neighborly courtesy and kindliness. While it is true that his invitation to come upon the land was not directly extended by appellant, nevertheless he was
 
 impliedly invited by
 
 the circumstances and habits of that particular vicinity. There is no evidence that respondent had visited this particular ranch for similar purposes at
 
 *Supp. 901
 
 other times. His status, however, as the operator of the local store and tavern, coupled with his ownership of the only telephone in the neighborhood, entitled him to assume that he would be welcome at isolated ranches for either business or social purposes. “ ‘Every man, by implication invites others to come to his house as they may have proper occasion either of business or courtesy or information, etc. Custom must determine in these cases what the limit is of that implied invitation.’ ” (Citation from Cooley on Torts, page 303,
 
 Cambou
 
 v.
 
 Marty,
 
 98 Cal.App. 598 [277 P. 365].)
 

 Having concluded that respondent was an invitee upon the premises, it follows that the duty imposed upon him was to refrain from acts of negligence. It is well recognized that negligence is relative to time, place and circumstances. If the conduct of respondent in sounding the horn of his vehicle was not that of the ordinary prudent person in like circumstances, and if the consequent panic, confusion and loss of the chickens was a direct and proximate result thereof, then respondent is liable for the damages thus inflicted. Before respondent may be charged with violation of the duty, it is essential that he shall have full knowledge of the facts which create the duty and, in addition thereto, an appreciation of the natural and probable consequences of his conduct.
 

 In considering the conduct of respondent in electing to attract the attention of occupants of the house by means of the automobile horn, rather than gambling with the unknown propensities of the dogs ostensibly guarding the residence, the trial court found that respondent had acted with commendable caution and circumspection. While it might have been inferred that respondent had knowledge of the fact that there were chickens in the immediate vicinity who would be alarmed by such strange and unusual noises, the trial court made no finding on that subject and we must assume that such finding, if it had been made, would be adverse to appellant. Respondent had, therefore, no full knowledge of the facts which might deter him, acting as an ordinary prudent person in like circumstances should, from sounding his horn.
 

 We conclude that the evidence sustains the finding of the trial court that the conduct of respondent was not negligent.
 

 Judgment is affirmed.
 

 Coughlin, P, J., and Mitchell, J., concurred.