335 P.2d 83

Pete **JIMENEZ** and Marta Jimenez, his wife, and Lucy Jimenez and Alice Jimenez, by their Guardian, ad litem, Pete Jimenez, Appellants,

v.

Imogene H. **STARKEY**, Appellee.

No. 6276.

Supreme Court of Arizona.

Feb. 11, 1959.

Rehearing Denied March 17, 1959.

Herbert B. Finn and Stephen S. Gorey, Phoenix, for appellants.

Kenneth S. Scoville, Phoenix, and Robert J. Spillman, Phoenix, of counsel, for appellee.

PHELPS, Chief Justice.

This is an appeal by Pete Jimenez and Marta Jimenez, his wife, and by Pete Jimenez as guardian ad litem for Alice Jimenez (now deceased) and Lucy Jimenez, minor children, plaintiffs-appellants. The appeal is from a judgment in favor of defendant-appellee, Imogene H. Starkey, which arose out of a collision in Phoenix between the automobiles of said parties. The complaint alleges that defendant-appellee operated her car at the time and place in a negligent manner proximately result- ing in injury to plaintiffs. Defendant plead contributory negligence in her answer to the third count of plaintiffs' complaint. This count is related solely to the claim of Pete Jimenez. The parties will hereinafter be designated as plaintiffs and defendant as they appeared in the trial court.

It is the contention of plaintiffs that the trial court erred in refusing to direct a verdict in favor of plaintiffs or for judgment n.o.v. for the reason that such verdict or judgment was justified by the evidence and that there was no substantial evidence to the contrary. This is without merit for the reason that the trial court will not weigh the evidence and substitute its judgment for that of the jury if there is substantial evidence to warrant submitting the case to the jury. This needs no citation of authority.

It is claimed that the trial court erred in admitting in evidence a complaint filed by plaintiff in a previous case against a different defendant. In that case it was alleged that the infant Alice Jimenez and her mother, Marta Jimenez, had suffered *severe injuries* as a result of having been struck by an automobile driven by one Quinones wherein $50,000 damages were sought. The complaint had neither been verified nor signed. There is no evidence in the record here that the case had gone to trial although an exhibit marked for

196

identification would indicate that it had done so. In any event, unless a pleading is either verified or the plaintiff is shown to have knowledge of its contents it is not properly admitted in evidence for impeachment purposes. Christensen v. Trotter, 9 Cir., 171 F.2d 66. Of course, if plaintiff had already gone to trial and relied upon the allegations in the previous complaint this would show both knowledge and reliance upon the allegations therein and the previous complaint under such circumstances would be admissible if its contents tended to impeach plaintiff in the case before the court. In the absence of a record disclosing the existence or nonexistence of plaintiffs' knowledge of its contents we decline to rule upon the question. Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693.

■ Appellants contend that the trial court abused its discretion in denying its motion for a new trial for the reason that the verdict and judgment are contrary to the weight of the evidence and to the law. An examination of the instructions given by the court indicate that the court correctly instructed the jury that the negligence of the plaintiff Pete Jimenez could not be imputed to the minors. We must presume that the jury obeyed such instructions. Therefore, in order to sustain the verdict against Lucy Jimenez, the eleven-year-old niece of Pete Jimenez, the jury had to find from the evidence that Pete Jimenez was negligent and that his negligence was the sole proximate cause of her injury, and in order to return a verdict against Alice Jimenez the jury had to find either that the negligence of Pete Jimenez was the sole proximate cause of injuries suffered by her, if any, or that the spinal meningitis with which she was afflicted was the proximate cause of her blindness independent of any injuries she may have sustained in the accident. There were sharp conflicts in the evidence on both of these issues. This makes it necessary for us to examine the evidence.

Appellants were unable to furnish a transcript of the evidence and we have in lieu thereof the "Trial Court's Allowed Statement of Testimony" and a portion of the transcript of the evidence consisting of the testimony of defendant and Dr. Darrel B. Manley, a defense witness, as provided for by the Rules of Civil Procedure, rules 75(b) and 75(c), 16 A.R.S.

Defendant Starkey testified to the effect that in driving south on Fifth Avenue, she stopped at all intersections in order to look for street signs because she was confused as to whether she was on the right street to go to Memorial Hospital; that she stopped at the intersection of Fifth and Maricopa and looked in both directions for traffic and saw none; that she started slowly across the intersection; that as she proceeded across the intersection she

became aware of another car crossing Fifth Avenue going east which at that time was approximately six feet in front of her. The front end had already passed by; that at the time of the impact she had reached a speed of 5 to 7 miles per hour; that she didn't put on her brakes because she didn't have time. Her car proceeded about 50 feet south where she stopped it. (Mrs. Starkey, whose testimony is in the record, testified 20 feet.) The Jimenez car was lying somewhat on its side but not turned over. It was headed west and was down in a ditch. She did not observe any headlights on the Jimenez car until the policeman called Jimenez over and had him switch on the headlights and then they came on but dimly. She gave her report to patrolman Rushing who was assigned to investigate the case which corresponds with her testimony at the trial. She denies talking to Lieutenant Freasier who was on duty and also went to the scene of the accident and denies that she told him or Jimenez that it was her fault or that she did not stop at Maricopa Street at the stop sign.

Pete Jimenez, according to the approved statement of the evidence by the court, testified that defendant told him that it was her fault and Freasier testified that defendant told him she didn't stop before entering the intersection of Fifth Avenue with Maricopa Street, and the witness Hernandez who resided near that intersection, testified that defendant did not stop before entering the intersection. Jimenez said he was driving about 20 miles per hour and was returning from the County Hospital on 35th Avenue where he had taken the infant Alice for emergency treatment. He was driving a 1932 Oldsmobile belonging to a relative. Jimenez testified that when he first observed the Starkey car he was in the act of crossing the intersection of Maricopa Street and Fifth Avenue. Defendant was then proceeding south on Fifth Avenue and was about 15 feet from his car and in the intersection. The traveled portion of Fifth Avenue is 23 feet wide and the traveled portion of Maricopa Street is 21 feet wide. The impact of the cars was 17 feet south of the north traveled portion of Maricopa Street and 6 feet and 10 inches east of the west portion of Fifth Avenue. We construe the measurements to mean from the north line of the traveled portion of Maricopa Street and the west line of the traveled portion of Fifth Avenue.

Jimenez was traveling three to four times as fast as Starkey was driving according to the evidence. The Jimenez car was struck on the left at about the rear door. It follows that in order for the impact to have occurred where it did Jimenez would necessarily have to be several feet west of the west line of the traveled portion

of Fifth Avenue when he saw defendant Starkey already in the intersection. As above stated, there was a sharp conflict as to whether defendant did or did not stop before entering the intersection; and whether the blindness of the infant Alice was due to pneumococci meningitis or to an injury sustained as a result of said collision.

We are of the view, when considering all the evidence as allowed by the court, that there was substantial evidence to support the verdict of the jury on both issues presented. It is admitted from the lips of Pete Jimenez that defendant was in the intersection when he first saw her. Defendant was traveling 5 to 7 miles per hour and he was traveling 20 miles per hour. The impact occurred near the west line of Fifth Avenue and near the south line of Maricopa Street. Mathematically, he then had to be several feet west of the west line of Fifth Avenue after defendant had entered into the intersection. We must consider the evidence in a light most favorable to sustaining the verdict of the jury and judgment of the lower court. There was substantial evidence to support the verdict of the jury. We do not believe the court abused its discretion in denying a new trial.

Judgment is therefore affirmed.

STRUCKMEYER, · UDALL, JOHNSON and BERNSTEIN, JJ., concur.