336 P.2d 852

Masako HELTON, Widow, and Masako Lee Helton, Leon Masayuki Helton and William Masao Helton, Minor children of George William Helton, Deceased, Petitioners,

v.

INDUSTRIAL COMMISSION of Arizona and State of Arizona-State Auditor (Arizona Game and Fish Commission), Respondents.

No. 6443.

Supreme Court of Arizona.

March 19, 1959.

Robert E. Yount and Fenton J. Mc-Donough, Phoenix, for petitioners.

Robert K. Park, Phoenix, for respondent Industrial Commission. John R. Franks, Donald J. Morgan, James D. Lester and Frances M. Long, Phoenix, of counsel.

BERNSTEIN, Justice.

By certiorari we are asked to review an award of the Industrial Commission denying "death benefits" to the petitioners for the death of their husband and father upon findings that the death did not arise out of and in the course of the decedent's employment, A.R.S. § 23–1021.

The decedent was killed in a highway accident approximately twenty miles north of Phoenix at about one a. m. on November 13, 1956 while driving a truck owned by his employer, the Arizona Game and Fish Commission. He had been working since November 9, 1956, as one of a four-member labor crew camping at the Page Springs Hatchery near Cornville, Arizona, approximately 110 miles north of Phoenix, and the truck was given to his charge to transport himself and the other members of the crew to the job site, to use in normal course to obtain supplies or in case of emergency and to return the men at the conclusion of their work period. It was the custom of the employment for men

camping at a job site to work ten straight days, 8 a. m. to 5 p. m., and then be allowed four days off. Thus, at the time of the accident, decedent's work period was not concluded and he was expected to work at 8 a. m. that morning.

No witness connected with decedent's employment could testify as to a known reason within the course of his employment for the deceased to travel where he did, apparently en route to Phoenix, at the time of the accident. The revealing testimony in that regard was that of a fellow workman, John Luten, who testified that he saw and spoke with the deceased when he returned with other members of the crew from Cottonwood, where groceries were purchased, at about 10 p. m. on November 12th. At that time, shortly before he was heard to drive off, the deceased said "he felt like going home." The deceased lived in Phoenix, where his family was at the time. However, it may be noted that Luten had previously stated, in affidavit form, that:

"Between ten and ten-thirty on the night of November 12, 1956 I saw George W. Helton, talked with him, but did not know he was going anywhere. He suddenly decided to leave in his pickup truck, why I do not know."

Some of the deceased's personal belongings were found in the truck and some at the camp site. An assistant federal aid coordinator with the Arizona Game and Fish Commission had discussed with the deceased the prospect of his permanent employment by the Commission, and it was expected that such status would be obtained in the near future, on or shortly after December 15, 1956.

Essentially upon the foregoing evidence the Commission found that the deceased "had abandoned his employment and had embarked upon a frolic of his own."

Arguing against the validity of the award, petitioners rely upon the uncertainty of purpose for the decedent's trip to invoke a presumption that the decedent was acting in accordance with the directives of his employer and, accordingly, must have been traveling in the interests of his employer. Cf. Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286. That argument, we believe, cannot avail petitioners here. Whatever "unexplained death" presumption might be appropriate in other circumstances, see Martin v. Industrial Commission, 75 Ariz. 403, 411, 257 P.2d 596, 601, it could not survive the explanation which was offered, and accepted by the Commission, in this case that the decedent's purpose was to visit his home for personal reasons. This court has previously approved what has become known as the Thayerian rule, adopted by the American

Law Institute in its Model Code of Evidence, Rules 701–705, that a presumption serves to establish the presumed fact only in the absence of contrary evidence, and that it vanishes upon the introduction of opposing evidence. See Silva v. Traver, 63 Ariz. 364, 162 P.2d 615; Martin v. Industrial Commission, 73 Ariz. 401, 242 P.2d 286. We also said in Hansen v. Oakley, 76 Ariz. 307, 311, 263 P.2d 807, 810, that the presumption "vanishes in the light of evidence which would allow a *reasonable mind* to infer" to the contrary. (Emphasis supplied.) Even if we were to utilize the rule permitting a presumption to stand unless opposed by *persuasive* evidence, advocated by Professor Morgan and in part adopted by the Commissioners on Uniform State Laws in Rule 14 of the Uniform Rules of Evidence,[1] petitioners' position would not be bettered. The Commission obviously believed the evidence contrary to the presumption. In that regard, petitioners' argument that Luten's testimony was untrustworthy in light of this prior affidavit deserves only passing mention: even if the affidavit is read as inconsistent with the testimony, and it need not be, it is for the Commission to weigh the credibility of conflicting evidence, and we find no suggestion of abuse of discretion in that regard. Cf. Muchmore v. Industrial Commission, 81 Ariz. 345, 306 P.2d 272.

Finally, petitioner argues that the decedent may have decided to quit his job, and thus was returning to his home in the course of his employment, see Harris v. Industrial Commission, 72 Ariz. 197, 198, 232 P.2d 846, 847. In the light of the facts that (a) such a course would have stranded the decedent's fellow workmen until a truck was sent to them; (b) decedent had in mind some assurance of permanent employment by the same employer; and (c) decedent left some of his gear at the camp, the inference contended for is far from irresistible. In any event, suffice it to say that, taking into account all the evidence, whatever other inferential findings might be drawn therefrom, the one drawn by the Commission was not unreasonable. See Muchmore v. Industrial Commission, supra; Harrington v. Industrial Commission, 84 Ariz. 356, 359, 328 P.2d 311, 313:

"We have said that an inference is nothing more than a permissible deduction from the testimony. Atchison, T. & S. F. R. Co. v. Hicks, 64 Ariz. 15, 165 P.2d 167. It has no legal probative effect other than the jury is pleased to attribute to it in a given case. Puget Sound Electric Ry. v. Benson, 9 Cir., 253 F. 710. Since it is merely a permissive deduction from the testimony, the jury or the triers of fact are not

---

[1]. See Morgan, Presumptions, 10 Rutgers L.Rev. 512; Morgan, Presumptions, 12 Wash.L.Rev. and State Bar J. 255; Gausewitz, Presumptions, 40 Minn.L.Rev. 391; McBaine, Burden of Proof; Presumptions, 2 U.C.L.A.L.Rev. 13

compelled to draw the inference even in the absence of contrary evidence and have the right to refuse to do so. Whether a particular inference can be drawn from the evidence is a question of law, but whether the inference shall be drawn in any given case is a question of fact for the jury. Blank v. Coffin, 20 Cal.2d 457, 126 P.2d 868. An inference of fact, even in the absence of conflicting evidence, does not forestall fact finding to the contrary. Seydler v. Baumgarten, Tex.Civ.App., 1956, 294 S.W.2d 467. The jury may accept or reject the inference or accord it such probative value as it desires. Bell Cab & U-Drive-It Co. v. Sloan, 193 Tenn. 352, 246 S.W.2d 41. Even if we assume that the inference to be drawn was reasonable, nonetheless, this is exclusively the province of the triers of fact and we will not disturb their conclusions unless they manifestly appear arbitrary. While the Commission may not arbitrarily disregard the only reasonable inference, Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389, there are here admittedly other inferences which might be drawn."

The award is affirmed.

PHELPS, C. J., and STRUCKMEYER, UDALL and JOHNSON, JJ., concur.