378 P.2d 913

Cecilia B. ALIRES, Administratrix of the Estates of David Alires, Steve Atencio, Juan C. Alires, Clara Alires, Bobby Alires, Juan A. Alires, Victor Alires, Sofie Alires and Michael Alires; and Guardian of the Estate of Crucita Alires, a minor, Appellant,

v.

SOUTHERN PACIFIC COMPANY, a corporation, Carl W. De Priest, and Belton E. Hodges, Appellees.

No. 6763.

Supreme Court of Arizona.

En Banc.

Feb. 20, 1963.

Rehearing Denied March 26, 1963.

Moore, Romley, Killingsworth & Kaplan, Phoenix, for appellant.

Evans, Kitchel & Jenckes and Ralph J. Lester, Phoenix, for appellees.

STRUCKMEYER, Justice.

This action is by Cecilia B. Alires as administratrix of the estates of nine deceased relatives and guardian of the estate of Crucita Alires, a minor. She appeals to this Court from a judgment entered upon jury verdicts in favor of the Southern Pacific Company, a Delaware corporation, and Carl W. De Priest, engineer and Belton E. Hodges, fireman, employees of defendant company.

On December 16th, 1956, at approximately 11:50 P.M. a 1937 Chevrolet automobile driven by one John Massey collided with the engine of the Southern Pacific Company's Golden State passenger train at the crossing of defendant's tracks and Thirty-fifth Avenue, a through boulevard in the City of Phoenix. Twelve of the thirteen occupants of the automobile were killed, the only survivor being Crucita Alires, an 18 months old child.

Plaintiff complained that the individual defendants operated the Golden State in a wanton, reckless and negligent manner and that defendant Southern Pacific Company wantonly, recklessly and negligently failed to provide adequate protection or warning for members of the public traveling on Thirty-fifth Avenue. Defendants denied negligence and affirmatively alleged that the negligence of the driver and adult passengers in the automobile either caused or contributed to the collision.

The crossing at which the accident occurred was within the incorporated limits of the City of Phoenix, and was heavily traveled, one car on the average crossing every 15 seconds. The Reynolds Aluminum Plant bordered both the Southern Pacific Tracks and Thirty-fifth Avenue and employed approximately 1,500 persons. Around midnight, during change of shift, traffic was particularly heavy. The train at its previous stop, Yuma, Arizona, was about one hour and forty minutes late. It was being operated at a speed of 79 miles an hour at the crossing. The Thirty-fifth Avenue Crossing was indicated by the customary wooden crossarm and a standard highway sign set 135 feet north of the crossing.

The Massey automobile was observed being driven recklessly prior to the accident. It struck the train on the left side at the rear of the first engine. Although the car was "smashed to pieces and nearly disintegrated," the train personnel were unaware of the accident and the train continued to the Union Station in downtown Phoenix. During the course of the evening before the accident Massey and the male members of the Alires family were observed drinking beer. Blood taken from the Massey body analyzed an alcoholic content of .23 per cent.[1] There were no eye witnesses to the

1. 0.15 per cent alcoholic content of blood is presumptively intoxicating. A.R.S. § 28–692.

accident and the evidence does not afford any certain clue as to why the Massey vehicle was traveling south on Thirty-fifth Avenue at the Southern Pacific Crossing at the time of the collision.

Plaintiff presents many assignments of error some of which raise matters so clearly and manifestly prejudicial as to require that a new trial be granted.

Defendants' requested instruction #4 is palpably erroneous and prejudicial. By statute:

"A. No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle or as to interfere with the driver's control over the driving mechanism of the vehicle.

"B. No passenger in a vehicle shall ride in such position as to interfere with the driver's view ahead or to the sides, or to interfere with his control over the driving mechanism of the vehicle." A.R.S. § 28–893.

■ Subsection A of the statute imposes a duty on the operator of a motor vehicle in three respects: (1) Not to drive when his vehicle is so loaded as to obstruct his view; (2) Not to drive when his vehicle is so loaded as to interfere with his control; (3) Not to drive when there are more than three people in the front seat *and* thereby his view is obstructed or his control interfered with. A driver is not prohibited from driving with three or more persons in the front seat if neither his view is obstructed nor his control interfered with.

■ Subsection B imposes a duty on a passenger not to obstruct the driver's view or interfere with his control. It does not forbid a passenger riding if the driver's view is obstructed or his control interfered with by another person. Notwithstanding, the lower court after stating the contents of the statute instructed the jury in this manner:

"* * * Therefore, if you find that the automobile in this case was driven when it was so loaded, or when the front seat had such a number of persons exceeding three, that the view of the driver was obstructed to the front or the sides of the automobile, or was so loaded as to interfere with the driver's control over the driving mechanism of the automobile, I instruct you that *all the adults in the automobile are negligent as a matter of law,* and if you find that such negligence was one of the factors which contributed to bring about the collision, there can be no recovery on account of the deaths of said adults." (Emphasis supplied.)

The instruction, therefore, erroneously directed the jurors to find all the adult

passengers *as a matter of law* guilty of negligence if the driver violated the statute, or if any one passenger interfered with the driver's view or control of the vehicle.[2] A reasonable prudent person might refuse to ride with a driver violating this statute but he is not negligent as a matter of law if he does not personally interfere with the driver's control or view. He would be negligent only because from all the facts and circumstances a jury might find that he failed to exercise ordinary care for his own safety.[3]

The instruction was prejudicially misleading far beyond its erroneous contents as a statement of the law governing the case. In Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325, we reversed on the giving of an instruction which permitted the jury to speculate as to the facts, saying:

"* * * There having been no testimony indicating defective brakes, the reading of this statute to the jury was misleading and might have induced them to believe that such state of facts

in the opinion of the court was possible under the evidence and could be considered by them. We consider the giving of this portion of the instruction to have been prejudicial error. * * *" Butane Corporation v. Kirby, supra, 66 Ariz. at 281, 187 P.2d at 332.

We also quoted and emphasized our holding in Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452, that:

"'* * * It is not sufficient that the facts are such that it might have existed. It must appear affirmatively that it did. * * *'" Butane Corporation v. Kirby, supra, 66 Ariz. at 282, 187 P.2d at 332.

Here, there were eight adults and five minors, three of whom were small children riding as passengers in the Massey automobile. There was no evidence whatsoever to indicate where in the automobile the various passengers were riding.[4] The instruction permitted the jury to speculate; (1) as to whether the driver's view was in

---

2. Since the trial of this case we have held that imperative directives such as "there can be no recovery" violate the Arizona Constitution, Art. 18, Sec. 5, A.R.S. and are prejudicial. Coyner Crop Dusters v. Marsh, 91 Ariz. 371, 372 P.2d 708; Layton v. Rocha, 90 Ariz. 369, 368 P. 2d 444.

3. Anno. 44 A.L.R.2d 238, 248, 250, 252, "Overcrowding motor vehicle or riding in unusual position thereon as affecting the liability for injury or damage."

4. It has been stated that there is no inference of negligence from the mere over-loading of a motor vehicle. Dillabough v. Okanogan County, 105 Wash. 609, 178 P. 802. The legal presumption where there are no facts to the contrary is, of course, that a person is complying with the law. See 9 B. Blashfield, Cyclopedia of Automobile Law and Practice, § 6070, p. 616. The passengers in the Massey vehicle can be so arranged that in fact the driver's vision and his operation would not be interfered with by placing the two women and the three smallest children in the front seat with the driver.

fact obstructed to the front or sides and, (2) whether the automobile was so loaded as to interfere with the driver's control and, (3) whether all or any one of the passengers interfered with his control or vision. Under the circumstances of this case where no adult passenger survived and consequently there is no explanation as to how or why the accident happened, the instruction did more than permit, it invited, speculation. The mere submission constituted a direction by the court to the jury that there was a state of facts to which the instruction applied—facts from which negligence as a matter of law could be found.[5]

[5, 6] The error of the court below was grossly compounded by the giving of defendants' requested instruction #15 reading:

"You are instructed that although a passenger in the automobile is not re-quired to assume the same responsibility for its operation as the driver, *he cannot utterly disregard plain warnings of imminent danger and fail to warn the driver*. It is the duty of a passenger in an automobile, where he knows *or ought to know* that the same is about to cross a railroad track to *observe* whether trains are approaching. If you find by a preponderance of the evidence that the deceased adult passengers failed in their duty in this respect, and that such failure proximately caused or contributed to cause the collision, there can be no recovery on account of said deaths."[6] (Emphasis supplied.)

Here again the jury could draw no conclusion unless it resorted to speculation. Among other things it could speculate that the adult passengers knew or ought to have known of the railroad crossing and (1) failed to observe whether trains were ap-

---

5. Moreover, any imagined state of facts from which the jury could conclude negligence as a matter of law of the passengers required the same conclusion as to the driver for if a passenger rode in such a position as to interfere with the driver's view or control then the driver was operating the automobile in violation of law.

6. Plaintiff does not conceptually attack the instruction but we can not pass it by, since it might be taken as inferentially approved.

 The first sentence is a rescript of our statement in *Humphrey v. Atchison, T. & S. F. Ry. Co.*, 50 Ariz. 167, 70 P.2d 319, with an essential element deleted. We said that a passenger "may not ut-terly disregard plain warnings of imminent danger, *more apparent to him than to the driver*, and fail to warn the latter." The omission of the italicized clause greatly enlarges the duty of a passenger.

 The second sentence imposing a duty to "ought to know" is in direct contradiction of our holding in *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827, where we expressly disapproved of an instruction arbitrarily making it the duty of a passenger to look and listen for approaching trains. The phrase "ought to know" carries the connotation of looking and listening for this is the only way a passenger can know.

proaching or (2) if observing failed to warn the driver thereof and (3) that such failures proximately caused the collision.[7]

 The court instructed the jury that none of the children "can be found to have been contributorily negligent" and further that its verdict must be in their favor if "the negligence of the defendants [if any] proximately caused or proximately contributed to cause the injury." Defendants argue from this instruction that by returning verdicts in favor of the defendants the jury found the sole, proximate cause of the accident to be the driver's negligence and that the defendants were not negligent or their negligence did not cause or contribute to the accident. cf. Jimenez v. Starkey, 85 Ariz. 194, 335 P.2d 83. Defendants argument as to the jury's finding that the sole proximate cause of the accident was the driver's negligence is dependent upon, for its validity, the assumption that the issues of the driver's or the adult passengers' negligence were correctly submitted to the jury. If the jury erroneously assumed negligence on their part, any conclusion as to that negligence being the sole proximate cause rests upon the same erroneous predicate.

The court properly instructed the jury that:

"The proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient, intervening cause, produces the injury and without which the result would not have occurred."

The jury could have found that the defendants were negligent, as for example in operating the train at a high and dangerous rate of speed, but that the accident would have occurred irrespective of the speed because the asserted driver's and adult passengers' negligence in failing to see and failing to warn produced the injury without which the result would not have occurred. In short, the jury could have believed that the driver's and passengers' negligent conduct as decided by speculation from the erroneous instruction was the efficient intervening force which alone was the proximate cause of the accident.[8]

 It is the established law of this state that the burden of proof of a plain-

---

7. The real danger is that all these conclusions may be contrary to the truth. It is possible that the driver either saw the train or the adult passengers or some of them saw the train and warned the driver but that at the last moment the brakes failed or that over the protests of the passengers the driver attempted to beat the train to the crossing.

8. The court charged the jury:
"As I have previously instructed you, if you find that the driver of the car was negligent in any respect and that such negligence was the *sole and proximate* cause of the collision, none of the plaintiffs may recover and your verdict shall be for the defendants, regardless of whether the other adults in the car were negligent or not." (Emphasis supplied.)

tiff's contributory negligence is upon the defendant. Martinez v. Anderson, 50 Ariz. 95, 69 P.2d 237. The instruction allowing, as it does, substitution by speculation for proof of facts denies to the plaintiff the benefit of the burden of proof. It is likewise defendants' burden to prove their affirmative allegation that plaintiff's negligence proximately caused the accident. *Under the statute and the instruction there is no imaginable factual situation involving negligence of any of the adults in the car to which there can not rationally be attributed the sole proximate cause of the accident.* It is what a jury may conclude from an erroneous instruction that makes the instruction prejudicial.

Because of defendants' erroneous instructions 4 and 15, it was possible for the jury to determine incorrectly both the driver's and the adult passengers' negligence and to ascribe to those acts of negligence the sole proximate cause of the accident. We can only conclude that the erroneous instructions may have prompted the jury's verdicts.

We are also of the opinion that certain relevant testimony was erroneously and prejudicially excluded. Prior to the trial, and at the inquest, the defendant Hodges, fireman, testified: " * * * *that is a par-*

*ticular bad crossing there,* all those aluminum employees are always crossing on that crossing, and we always watch that crossing." The trial court excluded from the cross-examination of Hodges, the fireman, any testimony as to whether he considered the Thirty-fifth Avenue Crossing a particularly bad crossing.[9] The exclusion of the fireman's testimony requires us to examine our recent holding in Wolfswinkel v. Southern Pacific Company, 81 Ariz. 302, 305 P.2d 447, for it is the authority on which defendants rely to support the ruling of the court.

The plaintiff's cause of action in negligence embraces both the conduct of the defendants as violating certain statutes and the failure of the defendants to perform their common law duty to use due care under all the circumstances of the case. In common law negligence, knowledge of facts out of which a duty arises is an essential element to fix liability.

"Fundamentally, the duty of a person to use care and his liability for negligence depend upon the tendency of his acts under the circumstances as they are known or should be known to him. The foundation of liability for negligence is knowledge—or what is deemed in law to be the same thing:

9. The question of the admissibility of Hodges' testimony in this aspect was raised at a pre-trial conference at which seemingly the trial judge specifically prohibited any examination at the trial which would elicit testimony that this was a "particular bad crossing."

opportunity by the exercise of reasonable diligence to acquire knowledge—·of the peril which subsequently results in injury. Concisely stated, negligence presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent. A man cannot be held responsible on the theory of negligence for an injury from an act or omission on his part unless it appears that he had knowledge * * *. The foregoing principles, which emphasize knowledge, actual or implied, as the foundation of the duty to use due care, are adhered to generally by the authorities. * * *" 38 Am.Jur., Negligence, § 23, pp. 665–666.

See: Nisbet v. Van Tuyl, 241 F.2d 874 (7th Cir. 1957); Duval v. Rowell, 124 Cal.App.2d Supp. 897, 269 P.2d 249; Schwerin v. H. C. Capwell Co., 140 Cal. App. 1, 34 P.2d 1050; Lambert v. City of New Haven, 129 Conn. 647, 30 A.2d 923; Toy v. Atlantic Gulf & Pacific Co., 176 Md. 197, 4 A.2d 757; American Airlines, Inc. v. Shell Oil Company, Inc., 355 Mich. 151, 94 N.W.2d 214.

 This knowledge, that the personal defendants were aware of, not alone the individual facts the sum of which establish a "bad crossing" (extra hazardous) but that the sum did create an unreasonable risk of harm to others, was provable like any other fact in the case. From the fact that the defendants recognized and knew of the extra hazardous nature of the crossing the jury could reasonably infer negligence on the part of the corporate defendant either in permitting the operation of its trains at a speed of 79 miles per hour or in failing to provide more adequate warning devices, or both. Knowledge of danger, coupled with the failure to act on that knowledge in a reasonable and prudent manner, is the essence of plaintiff's complaint.

 While the excluded testimony of the fireman concerning the "particular bad character" of the crossing is his conclusion and an opinion, its admission is not foreclosed where it is relevant to establish another or other issues in the case. Double or multiple possibility of use is an extremely common feature of evidence. The non-admissibility of an evidential fact for one purpose does not prevent its admission for any purpose otherwise proper. American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364; State v. Vidalez, 89 Ariz. 215, 360 P.2d 224; Leigh v. Swartz, 74 Ariz. 108, 245 P.2d 262. And see, 1 Wigmore 711, 3rd Ed. § 215.

Indeed, the testimony was admissible for still another purpose. It had probative value by which the jury could judge the quality of the defendants' negligence. Knowledge by those in charge of the train of the particular bad character of the crossing was relevant not only to determine

whether ordinary care was used, but to determine whether defendants' conduct reached the level of wantonness—that is, whether the train was being operated with a reckless indifference to the lives and safety of others using the crossing considering the want of special safety measures.

 In Wolfswinkel v. Southern Pacific Company, supra, the testimony of an assistant division engineer for the railroad was held properly excluded where offered to establish that the crossing, "required either a wigwag signal or blinker light". The principle to be applied is that where the facts can be intelligently described to the jurors and understood by them and they can form a reasonable opinion for themselves, the opinion of experts will be rejected. 20 Am.Jur., Evidence, § 781, p. 652. It finds its support in two fundamental concepts. First, opinion testimony in its broadest sense encroaches upon the province of the jury to determine for themselves the ultimate facts of the case. Second, if a litigant may call a witness under the guise of an expert to testify as to his opinion then fair play requires that the opposing litigant be allowed to rebut such opinion by calling other experts to testify in opposition. This results in trial by experts which among other things compounds the mischievous aspects of the encroachment upon the province of the jury.

Where, as here, the testimony was sought to be elicited from a party to the action, the reasons supporting the rule manifestly disappeared. Since the testimony could not have been used to supplant the jury's judgment as to the nature of the crossing but could have been used to establish knowledge and wantonness, little or no rebuttal was likely or possible and the purpose of the testimony could have been properly limited by a cautionary instruction. We conclude the testimony was improperly excluded. Any imputations arising from Wolfswinkel to the contrary are expressly disapproved.

The foregoing brings us to a further ground of reversible error. The trial court refused plaintiff's request for an instruction on the effect of wanton negligence as a bar to contributory negligence. Defendants again argue that the verdicts establish that the jury decided the issues on the basis of non-negligence of the defendants and that since wantonness only bars contributory negligence, the asserted error in the failure to instruct on wanton negligence is academic. In the light of our prior expressed conclusions rejecting defendants' argument an examination of the facts which might support a finding of wantonness becomes necessary.

Thirty-fifth Avenue was within the incorporated limits of the City of Phoenix and heavily traveled, particularly around midnight when the Reynolds Aluminum Plant changed shifts. The Reynolds Plant

bordered both Thirty-fifth Avenue and the Southern Pacific Company right-of-way. Its parking and outside working areas were brightly illuminated by overhead lights so that a motorist in the position of the driver observing for a train would look into the lights of the plant area. The Golden State was approximately one hour and forty minutes late at its last stop and was traveling 79 miles an hour. Other than the customary wooden crossarm near the railroad tracks, there were no signals maintained by the railroad such as an automatic wigwag to attract the attention of a driver of a motor vehicle to the possibility of an approaching train. It was a winter's night. There was, accordingly, a high degree of probability that the windows on an approaching vehicle would be up. The fireman was watching vehicular travel approaching from the south, the opposite direction to the Massey vehicle direction of travel and on the side of the engineer. At this crossing, the vehicular travel, in part, consisted of two other automobiles, one which crossed approximately one hundred feet and the other which crossed approximately fifty feet ahead of the train.[10]

This Court in determining whether the trial court erred in refusing to instruct on wanton negligence, must assume the truth of the evidence justifying the giv-

ing of such an instruction. Bryan v. Southern Pacific Company, 79 Ariz. 253, 286 P.2d 761. If the truth of the plaintiff's evidence is assumed, then it was possible for the jury to believe that there was a high degree of probability that substantial harm would inevitably result to persons in the position of the passengers in the Massey automobile. Hence, prejudicial error was committed in failing to instruct the jury on the effect of wantonness as a bar to the contributory negligence of the adult passengers particularly under the circumstances of this case that defendants asserted contributory negligence in the riding with an intoxicated driver.

Over the plaintiff's objection the trial court admitted into evidence a certificate of the Secretary of the Arizona Corporation Commission that he was unable to find a regulation of the commission in existence at the time of the accident which governed the speed of trains at the Thirty-fifth Avenue Crossing or required the Southern Pacific Company to maintain a flagman, gates, automatic signals or other warning or protective devices. Defendants thereafter requested and the court over objection charged the jury:

"You are instructed that the statutes and regulations of the State of Arizona did not require that the defendant

10. A passenger in the latter vehicle testified that the windows of his automobile were rolled up and he did not hear the train's whistle or bell until on or past the crossing.

Southern Pacific Company maintain a watchman or flagman or automatic signals or gates at this railroad crossing, nor that its trains should be operated at any specified rate of speed over said crossing.

"The requirements of the statutes and the regulations or *lack of regulations* of the Corporation Commission for warnings at Railroad Crossings merely prescribe the minimum of care." (Emphasis supplied).[11]

We have previously commented on this instruction in Wolfswinkel v. Southern Pacific Company, supra. Inferentially, the first paragraph of the instruction was disapproved. Plaintiff argues that the only purpose (of the evidence and the instruction) was to show that defendants were not violating any law and therefore were exercising due care. This is conceded by defendants for they state:

"If the defendants were not violating any statute or rule of the Corporation Commission, that is a circumstance and a factor for the jury to consider in determining whether they were negligent under common law rules."

■ Common law negligence is the failure to act as a reasonable and prudent person would act in like circumstances. Salt River Valley Water Users Ass'n. v. Compton, 39 Ariz. 491, 8 P.2d 249. "Negligence is simply determined by whether under the conditions then and there existing one should realize there is or should be anticipated an unreasonable risk of harm to one in the position of the injured person." Downs v. Sulphur Springs Valley Electric Co-op., Inc., 80 Ariz. 286, 297 P.2d 339. While from the failure to heed a statute or regulation the law conclusively infers a want of reasonable care, from the non-existence of statutes or regulations no rational inference concerning the care a reasonable prudent man should use can be drawn.[12] The care required is dependent upon the known and the reasonably foreseeable conditions existing at the crossing. That statutes or regulations did not exist cannot afford any guide by which defendants as reasonable and prudent men could have determined appropriate conduct or which the

11. The inclusion of the phrase "lack of regulations" is manifestly confusing and misleading. It is not the lack of regulations which prescribe defendant's duty.

12. From the lack of regulations the jury might infer that the corporation commissioners were of the opinion that a flagman, gates, automatic signals or warning or protective devices or a lower rate of speed than 79 miles per hour were unnecessary to reasonably protect the traveling public at the Thirty-fifth Avenue Crossing. The opinion of the commissioners if offered in person is expressly prohibited by Wolfswinkel v. Southern Pacific Company, supra. An inference as to their opinion, which inference may be contrary to the facts and cannot be rebutted, is to be doubly condemned.

jury, in retrospect, might conclude defendants did or did not act reasonably and prudently under the circumstances.

▆▆▆▆ Defendants' instruction #12 given by the court on the duty of the fireman is to be criticized in two aspects. The uncontradicted testimony of the fireman is that he never saw the Massey vehicle. Hence, the instruction as to the fireman's duty after he decided that the driver of the Massey vehicle did not intend to stop had no application to the case. The instruction states that, if at the time it was too late to avoid the collision by the exercise of due care, defendants were not to be held liable for "failing to avoid the collision". The instruction, if literally followed, would relieve the defendants of responsibility for prior negligent conduct in the use of excessive speed or the failure to use measures such as special warning devices to protect the crossing.[13]

▆▆▆▆ Defendants' instruction #11 given by the court concerning their right to assume that a motorist approaching a railroad crossing will exercise reasonable care is only a partial statement of the legal principle applicable. It should be qualified by a clear statement that in order to rely upon the exercise of reasonable care by another, defendants must be themselves free from the failure to exercise reasonable care and in addition that defendants must exercise reasonable care to learn whether those upon whose conduct they rely are in fact using such care. Bragg v. Mobilhome Company of Los Angeles, 145 Cal.App.2d 326, 302 P.2d 424.

For the foregoing reasons the judgment of the court below is reversed with directions to enter an order for a new trial.

BERNSTEIN, C. J., and LOCKWOOD, J., concurring.

JENNINGS, Justice (specially concurring).

I concur in the result of this case but I do not agree with the majority that the trial court improperly excluded the testimony of the defendant Hodges (the fireman) as to the character of the Thirty-fifth Avenue crossing.

In a pretrial deposition Hodges testified that " * * * near midnight the employees of that Reynolds Aluminum Plant are changing shifts there and they are going to and from work, *and at that particular time I considered it a bad crossing*". Again at a pretrial inquest Hodges testified that " * * *that is a particular bad crossing there* all those aluminum plant employees are always

---

13. This portion of the instruction in effect invokes the last clear chance doctrine to relieve defendants of their negligence. The doctrine has application only to a plaintiff's contributory negligence. Rollman v. Morgan, 73 Ariz. 305, 240 P.2d 1196, 32 A.L.R.2d 540.

crossing on that crossing, and we always watch that crossing." The trial court ruled that the italicized portions of Hodges' testimony were inadmissible because they constituted an opinion as to the character of the crossing.

The plaintiff contended that such testimony was admissible as an admission against interest by a party with respect to the condition of the railroad crossing. Plaintiff cites Wolfswinkel v. Southern Pacific Company, 81 Ariz. 302, 305 P.2d 447 (1956) for the proposition that admissions against interest by a party, with respect to the condition of a railroad crossing, are admissible notwithstanding they may be in the form of opinions. This was the view taken by the minority in Wolfswinkel. In that case plaintiff's decedent was killed at an allegedly defective railroad crossing. Plaintiff offered proof, rejected by the trial court, to the effect that two members of the railroad's staff were at the crossing prior to the accident and admitted its hazardous character and the need for additional signals. The minority stated that:

"It is our view that an assistant district engineer, who was delegated to inspect the railroad crossing with the view of determining the degree of hazards, if any, existing at such crossings, is thoroughly competent to determine such fact and any statement made by him to the railway safety inspector for the Corporation Commission while they were inspecting said crossing *for the purpose of determining what electric signals or other warnings, if any, would be required to make the Alma School crossing safe for the traveling public, was admissible in evidence, as an admission of the railroad company that it was a hazardous crossing, and for the purpose of showing the railroad company had knowledge of that fact.*" (Emphasis mine.) 81 Ariz. 302, 309, 305 P.2d 447, 452.

However, the majority rejected this view and held that:

"\* \* \* the purported *opinions* of agents of the company were properly excluded when offered as admissions against interest or for the purpose of showing defendants' actual knowledge of the condition and character of the crossing." 81 Ariz. 302, 313, 305 P.2d 447, 454.

The majority stated that:

"We believe the proffered evidence, which purportedly represented the opinions of the two railroad company agents, was clearly inadmissible. It was certainly not part of the res gestae; it was incompetent and highly prejudicial, and tended to invade the province of the jury. Admissions against interest are admitted as exceptions to the hearsay rule and are, of course, offered for the truth of their words.

Generally, statements which are only opinions or conclusions of matters in issue are inadmissible except where expert testimony is required; no such testimony was necessary here to enlighten the jury with respect to the character of the crossing. \* \* \*

"Despite recitations to the contrary in some writings, *a party's statement is generally rendered inadmissible as an admission if it is in the form of an opinion or conclusion.* There is virtually no sound authority to the contrary; an exception is that instance where an admission is in the form of an opinion with respect to fault and is given after and relates to the occurrence from which litigation arises." (Emphasis mine.) 81 Ariz. 302, 311–312, 305 P.2d 447, 454.

In the case at bar the majority state that although "the testimony could not have been used to supplant the jury's judgment as to the nature of the crossing" it "could have been used to establish knowledge and wantonness" since the testimony sought to be elicited was from a party to the action and therefore concluded that "the testimony was improperly excluded". They base this view on the "Rules of Multiple Admissibility of Evidence" stating that "the nonadmissibility of an evidential fact for one purpose does not prevent its admission for any purpose otherwise proper." However, this rule is predicated upon the proposition that the evidence is offered for the purpose for which it is admissible. American Smelting & Refining Co. v. Wusich, 92 Ariz. 159, 375 P.2d 364 (1962). Where evidence is not admissible for the purpose for which it is offered, it is proper to exclude it even though there existed a valid, but not stated, purpose for which it could have been received. Standard Oil Co. of Cal. v. Moore, 251 F.2d 188 (9th Cir. 1957); Spencer v. Bath Iron Works Corp., 140 Me. 287, 37 A.2d 174 (1944); State v. Goebel, 36 Wash. 2d 367, 218 P.2d 300 (1950). See also Wigmore, Wigmore on Evidence § 17, p. 320 (an offer of a fact for an *inadmissible purpose* A is properly excluded, though the same fact would have been *admissible for purpose B*) and Udall, Arizona Law of Evidence § 13. In the instant case the testimony was offered for the purpose of showing the condition of the crossing. In my opinion it was inadmissible for that purpose and the trial court did not err in excluding it even though the evidence may have been admissible for some other purpose. To rule that the trial court improperly excluded this evidence is placing an onerous burden upon the court to determine at the time evidence is offered, whether it is admissible for any purpose. The trial court risks reversal by excluding the evidence for the purpose offered when there exists yet another basis upon which it would be admissible.

There is yet another reason why the ruling of the trial court should be upheld. Declarations of admissions of an employee made after an event or transaction has been completed (and not excited utterances) although admissible against the employee are inadmissible against the employer even though made in explanation of an act or event which was itself within his employment and authority. Brooks v. Neer, 46 Ariz. 144, 47 P.2d 452 (1935); Benton v. Regeser, 20 Ariz. 273, 179 P. 966 (1919). See also Udall, Arizona Law of Evidence § 178, p. 389. Plaintiff did not specify against which defendant (the railroad or the employee) the evidence was offered. Hence, the trial court's exclusion of the evidence should be upheld since there existed a valid ground for such exclusion.

UDALL, Vice Chief Justice (specially concurring).

I join in the specially concurring opinion of Justice JENNINGS with regard to the admission of the testimony of the defendant Hodges. But in addition to the views expressed on that matter I cannot fully agree with the majority's treatment of the issues raised by instruction No. 4. Nevertheless, I do share with the majority the opinion that the instruction was erroneous insofar as it required the jury, upon finding that the driver's view was obstructed or his control in-

terfered with, to impute the negligence of the driver or a single offending passenger to all of the other adults as a matter of law. For that reason alone I agree that the case must be remanded for a new trial.

However, I cannot agree that, upon this record, a proper instruction incorporating the provisions of A.R.S. § 28–893 would unlawfully permit the jury to speculate as to the facts. Moreover, I cannot agree that, under our statute, there can be no inference of negligence when it is shown that more than three persons occupy the front seat of a vehicle. I shall discuss this point first.

The majority cite a 1919 opinion of the Washington Supreme Court for the proposition that no inference of negligence can arise from the mere overcrowding of an automobile, Dillabough v. Okanogan County, 105 Wash. 609, 178 P. 802 (1919).[1] Washington at that time had no statute like A.R.S. § 28–893. They next say that the presumption is that a person is complying with the law, and then imply that, in the absence of direct evidence that the driver's vision is obstructed or his control interfered with, there can be no finding that our statute is violated. This construction renders virtually meaningless that clause of the statute which states:

"No person shall drive a vehicle * * when there are in the front seat such

1. In my opinion this case does not support the proposition for which it is cited, and is factually distinguishable from the situation before us.

number of persons, *exceeding three,* as to obstruct the view of the driver * *." A.R.S. § 28–893, subd. A. (Emphasis added.)

I do not assert that the presence of more than three persons in the front seat of a motor vehicle is per se a violation of the statute. However, in my view the jury can reasonably infer that interference with the driver's view or control occurs whenever more than three persons, including children, occupy the front seat of a motor vehicle. Thus, whenever the presence of more than three persons in the front seat is shown, it is proper to instruct the jury in the terms of the statute, and to permit it to decide whether the presence of more than three persons resulted in obstruction of view or interference with control, and consequently in a violation of the statute. Warren v. Hale, 203 Ark. 608, 158 S.W.2d 51 (1942) is authority for this position under a statute identical to our own.[2] See also Lee v. Smith, 253 Minn. 401, 92 N.W.2d 117 (1958) where, under an identical statute, evidence that there were two adults and two children, 7 and 8 years of age, in the cab of a truck, plus evidence of some shuffling around as the occupants adjusted themselves in their seats was held sufficient to justify the jury in finding that the statute was violated.

In this case there was no direct evidence that there were more than three persons occupying the front seat of the death vehicle. It is undisputed, however, that thirteen prsons were crowded into the car. The majority say that a conclusion by the jury that the statute was violated would be unpermitted speculation. This ignores the rule in this state that an inference can be based upon an inference, in a civil case, *if the first inference is established to the exclusion of every other reasonable theory,* New York Life Ins. Co. v. McNeely, 52 Ariz. 181, 79 P.2d 948 (1938); Buzard v. Griffin, 89 Ariz. 42, 358 P.2d 155 (1961). Here the given fact is that thirteen people occupied the car, the first inference that more than three occupied the front seat, and the second inference, based upon the first, that thereby the driver's view was obstructed or his control was interfered with. If the first inference excludes every other *reasonable* theory, this chain of inference is permitted.

The only alternative theory to the inference that more than three persons occupied the front seat is that ten persons were piled three deep in the rear passenger compartment of a small 1937 model sedan, while three persons lounged in the front seat. I find this an unreasonable theory, especially in view of the facts that several of the adults had been drinking, that the

2. A.R.S. § 28–893 is a section of the Uniform Act Regulating Traffic on Highways. Therefore constructions of courts in other states having this act should be especially persuasive, that the ends of uniformity may be served.

vehicle ran through two stoplights just prior to the collision with the train, and that no effort was made to stop for the train although its oscillating headlight could be seen for several hundred yards before it reached the crossing. The presumption that a person obeyed the law vanishes in the face of compelling circumstantial evidence that the law is being violated. Cf. Helton v. Industrial Commission, 85 Ariz. 276, 336 P.2d 852 (1959). The jury could properly find, from the facts appearing in this record, that the driver of the death vehicle was violating A.R.S. § 28–893.